**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 21-cr-598-PLF** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW ZABAVSKY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT ZABAVSKY'S**
**MOTION TO COMPEL DISLOSURE OF REQUESTED DISCOVERY**

Defendant Andrew Zabavsky's First Motion to Compel Disclosure of Requested Discovery, ECF 130, is directed at seven broad requests for information that are either non-discoverable or that the government has already provided or is in the process of providing to the defense. Specifically, two of the requests are grossly overbroad, seeking police and Justice Department reports spanning back five years that have nothing to do with Karon Hylton-Brown's death or the defendant's conduct after his death and to which the defense is therefore not entitled; three of the requests involve non-witness contact information and notes that are not discoverable at this time, if they are discoverable at all; and the remaining two requests—one for specific electronic data and the other for general exculpatory information—have been fulfilled or are being fulfilled, to the extent the requested information exists. The defendant's motion is meritless and should be denied.

**LEGAL STANDARD**

A. Compelling the Disclosure of Witness Information and Statements

The defendant's discovery requests are directed, broadly, at material covered by Federal Rule of Criminal Procedure 16 and the Jencks Act and Federal Rule of Criminal Procedure 26.2. Rule 16 provides for broad discovery by a criminal defendant, but it is not boundless. Rather,

discovery is limited to "material" information, which is evidence that "enable[]s the defendant significantly to alter the quantum of proof in his favor." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998). While establishing materiality "is not a heavy burden," and includes both exculpatory and inculpatory information, it still requires "a strong indication that [the evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (quotation marks omitted).

The Jencks Act, 18 U.S.C. § 3500, provides that the statements of a government witness are discoverable after the witness has testified on direct examination at trial. *See generally Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Witness statements that are subject to discovery under the Jencks Act include: (1) written statements that are signed or otherwise adopted or approved by a witness; (2) substantially verbatim recordings or transcriptions of oral statements; and (3) grand jury testimony. *Sanders v. United States*, 316 F.2d 346, 348 (D.C. Cir. 1963). Under Rule 26.2, which incorporates the Jencks Act into the Federal Rules of Criminal Procedure, the defendant may discover a government witness's pretrial statements after the witness has testified on direct examination if the statements are in the government's possession and relate to the subject matter of the witness's testimony. *United States v. Stanfield*, 360 F.3d 1346, 1357 (D.C. Cir. 2004). The district court has discretion, however, to order production of Jencks Act material before the witness testifies. *United States v. Perry*, 471 F.2d 1057, 1067 (D.C. Cir. 1972). The existence or nonexistence of Jencks Act statements is an issue of fact to be determined by the district court. *Goldberg v. United States*, 425 U.S. 94, 108, 96 S. Ct. 1338, 1347, 47 L. Ed. 2d 603 (1976). A defendant's request for Jencks Act statements must be timely and sufficiently precise to identify the particular statements sought. *Palermo*, 360

U.S. at 346. Requests are invalid if they are overly broad or made before the witness has testified. *United States v. Pepe*, 747 F.2d 632, 651 (11th Cir. 1984).

**ARGUMENT**

The defendant seeks to compel a wide range of information, some of which has already been provided: technical and raw vehicle, GPS, and mapping data (request 1); "all handwritten notes and papers related to this case," without exception (request 2); names and contact information for every individual at the Department of Justice ("DOJ") Civil Rights Division and Metropolitan Police Department ("MPD") Internal Affairs Division who investigated this case (requests 3 and 4); all reports generated over the last five years by the MPD Major Crash Unit and reports about vehicular pursuits and homicides created by the DOJ Civil Rights Division (requests 5 and 6); and, generally, evidence helpful to the defense (request 7). Because these various requests are overbroad, seek either non-discoverable information or information that is not discoverable at this time, or seek information that has already been or is being provided, the motion should be denied.

A. Request 1: Electronic, Technical and Raw Data

The defendant seeks specific electronic data regarding the following categories: Leica scanning (request 1a, 1b, 1c, 1d, 1e, 1f), vehicle performance (requests 1g, 1k, 1l), electronic or digital versions of photographs and field notes (request 1i and 1j), and a general request for "[a]ll electronic files and paper printouts created from any and all computer programs or devices" related to this case. (Mot. to Compel, at 4).

First, the government has already provided the defense with substantial, if not full discovery related to Leica scans taken at the crash scene, including all raw and technical data. The government is further inquiring with the Leica scan technician regarding specific defense questions

to ensure that the defense has all the information to which it is entitled.  Second, the government

has provided all available data for the unmarked MPD vehicle driven by defendant Terrence

Sutton, entailing a report generated by the vehicle "black box."  The report reflects that the "black

box" did not collect any data because no triggering event occurred, such as an excessively hard

brake, airbag deployment, or collision.  At the defense's request, the government is currently

determining whether similar information exists regarding the defendant's vehicle and, if so, will

disclose it.  Third, both vehicles will be made available to the defense for inspection in the coming

weeks.  In addition, all digital photographs and electronic versions of notes taken by police officers

have been provided to the defense.

Finally, the request for "all electronic files and paper printouts" produced by a computer

program during the investigation of this case is overbroad.  To date, extensive discovery has been

provided covering broad categories of information—including reports and notes, photos and crime

scene Lieca scans, and video footage captured by surveillance cameras and body-worn camera

(BWC).  Absent a particularized need, a request for paper printouts where electronic versions have

been provided is redundant and not a basis to compel.

B.  Request 2: All Handwritten Notes and Reports Generated

The defendant seeks to compel "all handwritten notes and papers" derived during on-scene

investigation and testing (request 2a) and from investigation and analysis of this case (request 2b),

to include "all detailed and supplemental reports" (request 2c).  (Mot. to Compel, at 4).  A demand

so broad reflects a fundamental misunderstanding of criminal discovery and cannot form the basis

of a motion to compel.  *See, e.g.*, *United States v. Tarantino*, 846 F.2d 1384, 1417 (D.C. Cir. 1988)

("However, just as the Jencks Act does not provide for the discovery of statements by government

witnesses prior to their actual testimony, it also does not require production of statements by

potential witnesses who in fact do not ultimately testify.") (citations omitted); *United States v. Moore,* 651 F.3d 30, 75 (D.C. Cir. 2011) (recognizing that the defendant "cannot compel a district court judge to sift through every record in the government's possession" but "must raise a "colorable claim" that a specific document or set of documents contains Jencks statements). Moreover, the defendant's demand ignores what the government has repeatedly told the defense— that the government has already disclosed virtually every discoverable report, note, and witness statement in this case. This includes the reports and handwritten field notes of on-scene police officers and Department of Forensic Sciences field technicians, supplemental reports created by officers and investigating agents, notes and reports of witness interviews, and grand jury transcripts. In that respect, the defendant's motion is moot.

To the extent this request is directed at handwritten notes and papers created by investigating attorneys or law enforcement officers that are prepared during the deliberative process or in anticipation of litigation, these materials are not subject to disclosure. Rule 16(a)(2) specifically provides that, "[e]xcept as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." *See also Goldberg*, 425 U.S. at 105-6 (prosecutor's notes of impressions, beliefs, legal conclusions, and trial strategy not discoverable); *United States v. LiCausi*, 167 F.3d 36, 50 (1stCir. 1999) (defendant not entitled to discovery of FBI agent's prepatory investigative notes). The defendant's motion to compel such material should be denied.

C. Requests 3 and 4: Investigator Contact Information

Next, the defendant requests the names and contact information for "each person involved in investigating the incident" from the DOJ Civil Rights Division (request 3) and the MPD Internal

Affairs Division (request 4). For each, the defendant also seeks additional information about the individual's role in the investigation, when they learned of the investigation, and timing of their involvement. (Mot. to Compel, at 5).

Without elaborating, the defendant points to his obstruction charge as the basis for both requests--but this information is not relevant to the obstruction charge or any issue in the case. Counts Two and Three of the indictment allege that the defendant conspired to, and did, engage in misleading conduct concerning the fatal traffic collision that killed Mr. Hylton-Brown to prevent an internal MPD investigation into the incident and referral of the matter to federal authorities for a criminal civil rights investigation. As the Court noted during the January 25, 2022 hearing on defendant Sutton's motion to compel, this does not require the government to prove anything about whether there was, in fact, a criminal civil rights investigation, or a grand jury investigation of such charges. Rather, the government must prove the defendant obstructed justice to *prevent* such an investigation. Tr. Jan. 25, 2022, at 37:3-11. It would be ironic indeed if a defendant's success in stopping a federal investigation immunized him an obstruction charge—of course, as this Court and others have held, it does not. Accordingly, it is of no moment whether any civil rights charges were ultimately investigated by the DOJ Civil Rights Division, nor is there any demonstrated particularized need for this additional information.

The defendant's request for the contact information and nature of involvement for each MPD Internal Affairs Division officer who investigated this case is well beyond the scope of what is required under the law. Indeed, neither the Constitution nor Rule 16 requires the pretrial disclosure of the identities of government witnesses *per se*. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (*Brady* does not require government to "reveal before trial the names of all witnesses who will testify unfavorably"); *accord United States v. White*, 116 F.3d 903, 918 (D.C. Cir. 1997).

In any event, the defense is already aware of the identities of MPD Internal Affairs investigators involved based on the production of unredacted reports, notes, and other investigative materials, which includes the investigators' names. As such, there is no basis to compel the additional information the defendant seeks.

    D.  Requests 5 and 6: DOJ and MPD Reports Over Past 5 Years

The defendant also requests all investigation reports generated over the last five years by the MPD Major Crash Unit, to include the timing of the incident, when the Unit was notified, and how long after an ambulance was called. In addition, the defendant seeks all DOJ Civil Rights Division reports generated over the last five years related to vehicular pursuit or homicide investigations, to include when the investigation occurred, when the Division was informed of the incident, and when it began its investigation. The defendant asserts these materials are necessary for his defense "as it could be used to help establish that the defendant was acting within the norm of his profession during the incident in question." (Mot. to Compel, at 6).

Both requests should be denied as overbroad and irrelevant. As detailed in the indictment, the defendant is charged with obstruction of justice by, among other things, failing to notify his commanding officers and appropriate investigative units. The defendant's decisions on the night of this incident, and the choices he made at the scene of the collision and at the police station to mislead his commanding officer about what happened, are at the crux of these charges. Broader inquires into years' worth of Major Crash and DOJ investigations into how and when other officers investigated traffic collision investigations (about which the defendant had no knowledge), or when the ambulance arrived (which the defendant did not call and is uncontested) are wholly irrelevant to adjudicating the charged crimes.

Moreover, as explained above, the factual issues at play in this case do not turn on the involvement of the DOJ Civil Rights Division. Requiring all Division reports about other investigations over the past five years is thus immaterial to the preparation of the defense; it is not reasonably likely to reveal admissible evidence, aid witness preparation, corroborate testimony, or impeach witnesses. Because all of these requests are vastly overbroad and seek no material information, they should be denied.

E. Request 7: Exculpatory Information

Finally, the defendant generally seeks all information that could assist the preparation of the defense's case to include the ability to challenge the government's evidence. Here, there is no dispute over defendant's right to any and all materials that could be relevant to mounting his defense, whether under Rule 16 or *Brady* and its progeny. That is precisely why, as explained above, the government has taken a broad approach to discovery, providing virtually all the investigative information in its possession, including information meeting and exceeding its discovery obligations. The obligation to provide potentially exculpatory material in particular, as the government is fully aware and was admonished during the initial presentment hearing, is an ongoing one to which the government will continue to abide.

**CONCLUSION**

For all the foregoing reasons, the defendant's motion to compel should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: _____

AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7097 (Baset)
        (202) 252-6782 (Berkower)
Email: Ahmed.Baset@usdoj.gov
        risa.berkower@usdoj.gov