UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-598-PLF |
| | : | |
| v. | : | |
| | : | |
| TERENCE SUTTON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT
SUTTON'S MOTION FOR RECONSIDERATION**

The United States of America respectfully responds to defendant Sutton's Motion for Reconsideration (ECF 171). Defendant Sutton seeks reconsideration of the Court's April 22, 2022 Opinion (ECF 159) and Order (ECF 158) that limited discovery in this case to the Internal Affairs Department (IAD) vehicular pursuit reports that "would have been accessible to Mr. Sutton;" instead, the defendant seeks full access to ten years' worth of IAD files arising from other officers' police pursuits. On June 6, 2022, the Court directed the government to file a response addressing "Mr. Sutton's argument that IAD pursuit investigation files and reports that were not available to Mr. Sutton are nevertheless 'material' pursuant to Rule 16(a)(1)(e) of the Federal Rules of Criminal Procedure because they can be used to establish the standard of care of a reasonably prudent police officer." Minute Order. Because these IAD reports are irrelevant to the standard of care that applies in this case, they do not meet Rule 16's threshold for materiality, while at the same time their production would be unduly burdensome. The motion should be denied.

The defendant, a Metropolitan Police Department (MPD) officer, is charged with Second Degree Murder, in violation of D.C. Code § 22-2103, for acting with conscious disregard of an extreme risk of death and serious bodily injury to a civilian, Karon Hylton-Brown, during a police

1

chase. The chase ended when the defendant pursued Hylton-Brown from an alleyway into the street, where Hylton-Brown was struck by an oncoming car. He died a short time later.

The IAD investigations into other officers' vehicular pursuits are wholly irrelevant to the question that will be before the jury in this case: whether defendant Sutton drove in a manner that consciously disregarded a significant risk of death or injury to Hylton-Brown given the laws that govern MPD officers' driving. The purpose of an IAD investigation is not to assess whether officers have broken the law, but whether they have violated MPD General Orders. And, significantly, the D.C. Court of Appeals has ruled that MPD's General Orders do not set the legal standard of care that governs whether officers have broken the law. *Tillery v. District of Columbia*, 227 A.3d 147, 152 n.17 (D.C. May 21, 2020). The defendant's own motion recognizes this. *See* Mot. for Reconsideration, at 2 ("MPD General Orders do not establish a standard of care.").

Instead, the standard of care on which the defendant's conduct will be judged is set by longstanding D.C. law and municipal regulations that put the defendant on notice of the legal requirements that officers must satisfy when driving MPD cars.[1] *See* D.C. Mun. Regs. §§ 18-2002.1-2002.4. All MPD officers—including defendant Sutton—receive mandatory training on these rules before they may drive MPD vehicles.[2] For instance, the Municipal Regulations establish that while officers may disobey traffic laws to carry out their duties, they may only do so while engaging their emergency sirens as reasonably necessary to ensure safety, they may only speed "so long as it does not endanger life or property," and they may proceed through red lights or stop signs "only after slowing down as may be necessary for safe operation." D.C. Mun. Reg. §§ 18-2002.2, 18-2002.3. These standards are further codified in the D.C. Code, which prohibits

---

[1] This standard is discussed in detail in the government's Opposition to Defendant Sutton's Fifth Motion to Compel Disclosure (ECF 165), which the government incorporates here by reference.
[2] Materials showing the training the defendant received were produced on October 5, 2021.

the assertion of governmental immunity in cases where a police officer causes someone's death by grossly negligent driving in an emergency vehicle.  D.C. Code § 2-412.  And these rules are also reflected in more than two decades of relevant D.C. case law.  *See, e.g.*, *Tillery*, 227 A.3d 147; *District of Columbia v. Hawkins*, 782 A.2d 293, 391 (D.C. 2001); *Duggan v. District of Columbia*, 783 A.2 563, 568-69 (D.C. 2001), *vacated*, 797 A.2d 1233, *decision reinstated in relevant part*, 884 A.2d 661; *District of Columbia v. Walker*, 689 A.2d 40 (D.C. 1997).

It is these municipal regulations and D.C. Code provisions that set the standard of care for MPD officers' driving, not IAD's determination of whether an officer complied with or violated a MPD General Order during a vehicular pursuit.  Indeed, to the extent an officer's non-compliance with a General Order is at all relevant to the question of whether he broke the law, it is merely as one factor the jury may use to assess whether, under the particular facts of the case, the officer deviated from the legal standard of care *with gross negligence.  See Tillery*, 227 A.3d at 152 n.17 ("A violation of an MPD General Order, we have said, 'is a factor the jury can consider in determining whether the officer was grossly negligent in departing from the standard of care.'").  This means that while the jury may consider an officer's General Order violation during a police chase as evidence that he acted with gross negligence on that occasion (because his employer's policies prohibited him from engaging in that conduct), the jury could not find that the defendant broke the law based only on a General Order violation.

Given the applicable standard of care set by D.C. law and municipal regulations, IAD investigations of other officers for General Order violations committed on other occasions are not material to the charged crimes.  Moreover, IAD's conclusions in those cases do not establish a standard of care concerning how a "reasonably prudent officer" would drive for purposes of complying with the law.  *See United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (holding

3

that material evidence requires "a strong indication that [the evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (defining material information as evidence that "enable[s] the defendant significantly to alter the quantum of proof in his favor").  As such, these materials are not discoverable under Rule 16.

At the same time, requiring the production of ten years' worth of IAD files would be unduly burdensome.  IAD investigations can require weeks or months of intense fact gathering by investigators.  Compiling ten years of these files would require substantial resources at MPD, as access to these materials is highly controlled.  This further weighs against granting discovery that already fails to meet the threshold of materiality.  *United States v. O'Keefe*, No. 06-cr-249-PLF, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (noting that "burdensomeness and logistical difficulty" are "factors to be considered both by defendants in framing discovery requests and by courts in resolving discovery disputes").[3]

Finally, the defendant's reliance on federal civil rights cases to establish a different standard of care than that set forth in D.C. law and regulations conflates two unrelated legal standards.  *See* Mot. for Reconsideration, at 3-4 (citing cases involving alleged unconstitutional conduct by police and claims under D.C. law arising from the same conduct).  The defendant asserts that "his actions were objectively reasonable and were 'privileged' under the Constitution," and that the IAD reports from other cases are necessary to advance this defense.  Mot. for Reconsideration, at 4.  This misstates the legal standard applicable to this case.  Where an officer is alleged to have violated the Fourth Amendment to the U.S. Constitution—such as in a criminal

---

[3] The government is facing similar challenges in producing five years' worth of defendant Sutton's PD-163s, which the Court ordered in its April 22, 2022 Order. (ECF 158).  The government will raise this with the defense and, if necessary, the Court in the near future.

4

prosecution under 18 U.S.C. § 242 for excessive force during a *Terry* stop or an arrest, or where an officer is sued under 42 U.S.C. § 1983 for that conduct—the legal standard is objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989) (setting this standard for Fourth Amendment excessive force violations).[4]  Here, however, where no Fourth Amendment violation is alleged, that legal standard does not apply.  Moreover, as explained in the government's Opposition to the defendant's Fifth Motion to Compel (ECF 165), the U.S. Constitution sets a floor, not a ceiling, for officers' conduct.  Where the state has imposed additional legal requirements on those to whom it entrusts with police power, it is both the U.S. Constitution *and* those added requirements that govern officers' on-duty conduct.  Here, it is not a defense to assert that the defendant's conduct was "objectively reasonable" under the Constitution, because he is not charged with a constitutional violation.  Therefore, no discovery concerning "objective reasonableness" is material to any cognizable defense, nor is this a proper basis for expert opinion.

For all these reasons, the defendant's Motion for Reconsideration should be denied.

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            United States Attorney
                                            DC Bar No. 481052

By:   /s/ Risa Berkower
           RISA BERKOWER
           NY Bar No. 4536538
           Assistant United States Attorney
           U.S. Attorney's Office for the District of Columbia
           Phone: (202) 252-6782
           Email: risa.berkower@usdoj.gov

---

[4] As *Graham* also explained, not all constitutional violations use the same legal standard. 490 U.S. at 393. Rather, the applicable legal standard depends on the constitutional violation at issue. *Id*. at 393-94 ("As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'").