## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-598-PLF-01 |
| | : | |
| TERENCE SUTTON and | : | Hon. Paul L. Friedman |
| ANDREW ZABAVSKY, | : | |
| | : | |
| Defendants. | : | |

## TERENCE D. SUTTON, JR.'S OPPOSITION TO GOVERNMENT'S
## MOTION *IN LIMINE* TO EXCLUDE INADMISSIBLE EXPERT TESTIMONY

Comes now Defendant Terence D. Sutton, Jr., through counsel, HANNON LAW GROUP, LPP, and respectfully submits this response to the Government's Motion *In Limine* to Exclude Inadmissible Expert Testimony of Ofc. Sutton's expert witnesses.  In support of this response, Ofc. Sutton states the following:

## INTRODUCTION

On August 8, 2022, the government filed its motion *in limine* to bar the proposed testimony of Ofc. Sutton's four expert witnesses or, in the alternative, subject the admissibility of their proposed testimony to a *Daubert* hearing.  (Govt. Mot. *In Limine* [Dkt. No. 219] at 4).  The government argues that the proposed opinion testimony "fails to satisfy the basic requirements for admissible expert testimony under Fed. R. Evid. 702, 703, 704, 401, and 403 and should therefore be excluded."  (*Id*.)  The government also argues that the proposed testimony of Thomas Langley should be excluded because Ofc. Sutton's disclosure for Thomas Langley does not satisfy Fed. R. Crim. P. 16(b)(1)(C)'s expert disclosure requirements.  (*Id*.)

The government seeks to preclude Ofc. Sutton's experts from providing expert testimony on these topics, while introducing multiple experts of their own who would seemingly provide testimony on the same topics.  This undermines the government's motion to exclude the expert

testimony offered by Ofc. Sutton's experts.  The government also misrepresents the reliability, relevance, probative value, and helpfulness of the testimony offered by Ofc. Sutton's expert witnesses.  For these reasons, and additional reasons discussed below, the government's motion to exclude expert testimony should be denied.

## ARGUMENT

### I.    JOHN BRENNAN, BRUCE BARNARD, MICHAEL WEAR, AND THOMAS LANGLEY ARE QUALIFIED TO PROVIDE EXPERT WITNESS TESTIMONY IN THIS CASE.

#### A.  Sergeant John Brennan

The government challenges the proposed expert witness testimony of former MPD Sergeant John Brennan for a number of reasons.  The first challenge is related to the scope of Sgt. Brennan's training and experience, which the government contends is inadequate for the purpose of serving as an expert on policing procedures.  More specifically, the government contends that Sgt. Brennan's experience and training are insufficient for an expert witness because they are limited to his forty-seven years of experience with the MPD.  It is clear that the government's challenge is based on the mistaken belief that the *Daubert* gate-keeping factors are applicable to all experts; however, as the Supreme Court clarified in *Kumho Tire*, the gate-keeping factors are discretionary and are not necessarily applicable when assessing the credentials of certain expert witnesses.  It follows from *Kumho Tire Co. v. Carmichael* that experts can be so qualified based on considerations other than education or scientific and technical knowledge.  526 U.S. 137, 138 (1999).  "Expertise gained through personal experience is a valid basis for expert testimony." *Huthnance v. D.C.*, 793 F. Supp. 2d 183, 208 (D.D.C. 2011), aff'd, 722 F.3d 371 (D.C. Cir. 2013) (citing *United States v. Parra*, 402 F.3d 752, 758–60 (7th Cir.2005)).

2

Here, not all of the *Daubert* gate-keeping factors are necessary to determine the admissibility of expert testimony.  Sgt. Brennan's expert testimony is based on his experience with the MPD rather than scientific knowledge.  Sgt. Brennan's training and over four decades of personal experience with the MPD have supplied him with the requisite specialized knowledge to qualify as an expert on police procedures and practices because he was a leader in the very same policing strategy employed by the City.

Additionally, Sgt. Brennan's personal experience with the Crime Suppression Team and its prior iterations provides him the specialized experience and knowledge to opine on the Crime Suppression Team's training, their mission and objectives, and their authority to employ certain tactics.  Testimony on these topics is particularly relevant given the fact that Ofc. Sutton was a member of the MPD and the Crime Suppression Team.  In light of the foregoing, Sgt. Brennan's expert testimony will assist the trier of fact and is the product of specialized knowledge, experience, and reliable principles and methods.

### B.  Bruce Alan Barnard

The government makes a blanket statement with regard to the expert opinions of Mr. Barnard by alleging that all of his opinions are inadmissible.  The government also contends that certain portions of Mr. Barnard's proffered expert testimony are beyond the scope of his expertise.  The government alleges that Mr. Barnard does not have expertise in police policies, has never worked as a police officer, an official at a police department, or been employed by MPD in any capacity, and his experience as a law enforcement trainer has focused entirely on certain legal topics.  Mr. Barnard's expert testimony is both helpful and reliable.  Mr. Barnard's expert testimony, given his education and knowledge on national police standards and practices, show that his testimony is both relevant and reliable.

The expert notice and curriculum vitae for Mr. Barnard demonstrates that he is qualified to serve as an expert witness on national police standards and practices concerning seizure, pursuits, and use of force.  Mr. Barnard's background support the relevance and reliability of his testimony, which will explain standard police practices, policies and procedures in which Ofc. Sutton and all other MPD officers are trained.  Mr. Barnard will compare Ofc. Sutton's actions to MPD policies and training materials, which he has thoroughly reviewed, and to the national standards that have been the focus of his comprehensive professional experience.  Mr. Barnard's testimony on these topics will be relevant to the reasonable standard of care the government must prove Ofc. Sutton violated.

### C.  Michael Wear

The government alleges that the entirety of Mr. Wear's proffered expert testimony is inadmissible because his opinions are irrelevant, unreliable, beyond the scope of his expertise, provide improper state of mind evidence, and pose a risk of misleading the jury.

In his expert notice and disclosures, Ofc. Sutton provided sufficient detail as to the education, knowledge, and experience of Mr. Wear that qualify Mr. Wear to serve as an expert witness in this matter.  Mr. Wear actually taught the MPD curriculum which is the subject of the government's theory of criminal conduct.  Mr. Wear's education supports his qualification as an expert witness.  He has a Bachelor of Arts in Criminal Justice and a Master's Degree in Management.  Nevertheless, Mr. Wear's testimony, in large part, will be based upon his specialized knowledge in police practices and his experience as a law enforcement officer with the MPD.  Mr. Wear was a member of the MPD for over twenty-nine non-consecutive years. During that time, Mr. Wear served as a police officer, senior officer, sergeant, and reserve sergeant.  Between November 2018 and October 2020, Mr. Wear assisted with expanding departmental programs and provided oversight on departmental policy, standards, and practices

for the purpose of advising management on best practices while evaluating methods to ensure current law enforcement practices were being adhered to.  Mr. Wear also assisted with the MPD's training program, and presented vehicle training as a subject matter expert to MPD personnel.

Mr. Wear's reliability as an expert in this context is more than sufficient.  Accordingly, this Court should accept Mr. Wear as an expert with respect to police procedures, practices and training as they concern the MPD, and permit him to offer opinion testimony on the topics outlined in Ofc. Sutton's expert notice and disclosures.

**D.  Thomas Langley**

The government argues that Mr. Langley's testimony should be excluded because it is grossly deficient under Fed. R. Crim. P. 16(b)(1)(C)'s expert disclosure requirements.  However, it was the government's delay that prevented Mr. Langley from having his report prepared on time.  On August 4, 2022, discovery letter number 7 was submitted to the government outlining additional needs from Mr. Langley in order for him to complete his review/report.  The requests included, chain of custody information for the vehicles, information relating to equipment installed in the vehicles, and tracking information.  The government has not responded in full to these requests.  Some chain of custody information was provided on August 19, 2022.  Mr. Langley could not make these assessments until after he reviewed the vehicles, on June 28-29, 2022.  This late date for the vehicle inspection was due to the government's having lost possession of Ofc. Sutton's vehicle, which is a fact the government did not initially disclose. The vehicle was apparently sold and had to be reacquired, which further delayed Mr. Langley's inspection of the vehicle.  As a result, Mr. Langley did not have ample time or the materials necessary to prepare his expert report before the July 15, 2022 expert disclosure deadline.

## II.  THE EXPERT TESTIMONY OF JOHN BRENNAN, BRUCE BARNARD, AND MICHAEL WEAR IS ADMISSIBLE.

### A.  The Experts' Testimony is Relevant and Will Assist the Trier of Fact.

For expert testimony to be relevant, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  "The facts of every case will determine whether expert testimony would assist the jury." *Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993).  In cases where "something peculiar about law enforcement (e.g. the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact", the juror's common knowledge and experience may not suffice to effectively assess the defendant officer's conduct.  *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017) (quoting *Florek v. Village of Mundelein*, 649 F.3d 594, 602 (7th Cir. 2011)).

The government is incorrect in its assessment that the expert testimony of Sgt. Brennan, Mr. Barnard, and Mr. Wear is inadmissible because it is irrelevant and provides legal conclusions that will mislead and confuse the jury.  As the underlying facts in this case are beyond the ken of the average juror, making the anticipated expert testimony of Ofc. Sutton's expert witnesses ever more relevant.  The facts and conduct at issue in this case are not of the type that lay jurors are fully equipped to understand based on their everyday experiences. *Brown*, 871 F.3d at 538.  The facts and conduct embrace particular, specialized police practices and procedures employed by MPD officers and, particularly, members of the Crime Suppression Team.  This includes education on compliance with dictates of the Supreme Court related to search and seizure, pursuits, and use of force.

For example, the type of conduct or activity that provides a police officer with the reasonable suspicion or probable cause necessary to stop or arrest someone is not necessarily something a lay juror has knowledge of or understands.  Expert testimony from Sgt. Brennan,

Mr. Barnard, and Mr. Wear would help the jury understand when, and in what circumstances, a police officer has the reasonable suspicion or probable cause necessary to stop, search, arrest, follow or pursue someone.  Additionally, the factors a police officer must take into consideration when following or pursuing someone in a police vehicle are something that is not necessarily common knowledge.  Again, expert testimony from Sgt. Brennan, Mr. Barnard, and Mr. Wear would inform the jury and help them comprehend the factors police officers must take into consideration when they follow or pursue someone, and what actions escalate following someone to pursuing them.  These are two examples of facts and conduct the jury will be tasked with evaluating, but there are additional issues that the jury is responsible for assessing that go beyond common knowledge of a lay juror.

Ofc. Sutton's expert witnesses possess specialized knowledge of particular legal concepts, police procedures, and MPD policies and training that could inform and assist the jury. A lay juror who is not in the law enforcement profession is not likely to have personal experience with legal concepts like reasonable suspicion and probable cause, law enforcement tactics such as *Terry* stops or pursuits, or police policies and training.  Because Ofc. Sutton's expert witnesses can draw conclusions from the facts and evidence that a lay juror could not, their testimony will significantly assist the jury with understanding the facts and issues in this case, and in evaluating the conduct of Ofc. Sutton under the circumstances of the specific incident at issue in this case.

Contrary to the government's contention, Ofc. Sutton's experts' proposed testimony on police practices and the MPD's policies and training present no risk in misleading the jury.  Ofc. Sutton's expert witnesses do not intend to testify as to legal conclusions regarding Ofc. Sutton's conduct.  Instead, Ofc. Sutton's experts will testify about the factual issues regarding Ofc.

Sutton's compliance with national police practices, the MPD's policies and training, and the local laws that govern officers' actions when engaging in a vehicular pursuit or a *Terry* stop. Relying on the facts and evidence presented, Ofc. Sutton's experts will opine that Ofc. Sutton's actions were consistent with standard police practices, the MPD's policies and training, and local traffic laws.  The experts' testimony will not tell the jury the legal conclusions or decisions they should make; rather, their testimony will help the jury in understanding how the conduct of Ofc. Sutton was consistent with the laws and policies that governed Ofc. Sutton's conduct and the police practices he employed on the night of the incident.

Ofc. Sutton's expert notice and disclosures provide sufficient detail as to the credentials, experience, and knowledge that qualify Sgt. Brennan, Mr. Barnard, and Mr. Wear to serve as experts on these particular topics.  In addition, these experts relied upon sufficient evidence and facts to support each of the opinions they intend to offer as expert testimony, and have connected their opinions to the specific facts to opine on these topics.  The facts and evidence relied upon by Ofc. Sutton's experts was listed in an attachment to the expert notice and disclosures Ofc. Sutton provided the government on July 15, 2022.

This type of expert testimony has been admitted in other cases based on the rationale that such testimony will assist the jury in evaluating and making decisions on important issues.  In *United States v. Perkins*, the Fourth Circuit permitted expert testimony that there was no law enforcement or legitimate reason for the subject officer's use of force based on the expert's professional assessment.  470 F.3d 150, 160 (4th Cir. 2006).  Similarly, in *United States v. Mohr*, the Fourth Circuit concluded that expert testimony regarding whether an officer's actions were "in accord with prevailing police practices" and consistent with her training was admissible as it properly assisted the jury.  318 F.3d 613, 625 (4th Cir. 2003).  See also *United States v. Myers*,

972 F.2d 1566, 1577-78 (11th Cir. 1992) (permitting expert testimony on whether an officer's conduct was "in accordance with prevailing police standards."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) ("Courts have permitted experts to testify about discrete police-practice issues when those experts are properly credentialed and their testimony assists the trier of fact.").

Excluding expert witness testimony that would assist the jury would be particularly inappropriate in this case.  In criminal cases, defendants have "a constitutional right to a 'meaningful opportunity to present a complete defense.'"  *Brown*, 871 F.3d at 538 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006).  If evidence could support a theory of the defendant's innocence, the trial court must "focus on the probative value or potential adverse effects of admitting the defense evidence."  *Id*. at 329.  "Categorically excluding this type of evidence without a case-specific inquiry under Rules 403 and 702 would raise serious constitutional concerns."  *Brown*, 871 F.3d at 538 (citing *Rock v. Arkansas*, 483 U.S. 44, 61(1987)) (A "legitimate interest in barring unreliable evidence does not extend to per se exclusions that may be reliable in an individual case.").

Here, a fact in issue is whether Ofc. Sutton's actions preceding the traffic collision were lawful and permissible pursuant to the MPD's policies and training.  For the reasons stated above, the testimony of Ofc. Sutton's expert witnesses would undoubtedly "help the trier of fact to understand the evidence or to determine a fact in issue," as required under Fed. R. Evid. 702.  Expert testimony on the relevant laws, policies, training, and police practices would aid the jury as they have been tasked with evaluating Ofc. Sutton's conduct in this particular instance.

The government cites *Burkhart v. WMATA* in furtherance of its argument that the opinions offered by Ofc. Sutton's experts regarding the MPD's policies and training, and the

lawfulness of Ofc. Sutton's actions preceding the traffic accident are inadmissible because they state legal conclusions that would not assist the jury.  112 F.3d 1207, 1212–13 (D.C. Cir. 1997); (Govt. Mot. In Limine [Dkt. No. 219] at 6).  In *Burkhart*, the Court of Appeals concluded that expert testimony on legal conclusions is inadmissible; however, the court also explained that "the line between inadmissible legal conclusion and admissible assistance to the trier of fact in understanding the evidence or in determining a fact in issue is not always bright."  *Id*. at 1212.  "In other words, an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."  *Id*. at 1212–13.

It is clear that the government misinterprets and misconstrues the true holding of *Burkhart*.  The government mistakenly categorizes the proffered testimony of Ofc. Sutton's experts as legal conclusions that Ofc. Sutton's conduct did not violate the law.  Specifically, the government states that the following opinions are impermissible legal conclusions: (1) that officers had sufficient reasonable suspicion to conduct a *Terry* stop of Hylton-Brown; (2) that the CST tactics employed were lawful; (3) that Ofc. Sutton's driving decisions were consistent with District of Columbia law; (4) that events transpiring while Ofc. Sutton followed Hylton-Brown gave him additional legal reasons to stop Hylton-Brown; (5) that MPD officers are permitted to violate D.C. traffic laws under particular circumstances; (6) that Ofc. Sutton's driving did not endanger members of the public; (7) that Ofc. Sutton did not seize Hylton-Brown or use force against him in any way, as defined by Supreme Court precedent; (8) that the Indictment does not describe any conduct by Ofc. Sutton which violates his duty to respect the constitutional rights of Hylton-Brown; (9) that Ofc. Sutton's conduct conforms with known constitutional standards established by the courts; (10) that Ofc. Sutton complied with his duty to protect the public from

potential criminal activities by Hylton-Brown and engaged in reasonable law enforcement activities that were not in violation of Hylton-Brown's rights; (11) that conspiracy to obstruct justice requires that officers know there would be a Department of Justice investigation; (12) that violations of departmental policy do not amount to violations of law or legal standards; (13) that MPD officers are legally permitted to pursue a suspect for any crime committed in their presence; and (14) that Ofc. Sutton acted in accordance with legal standards during the allege pursuit of Hylton-Brown.[1]

The proposed testimony of Ofc. Sutton's expert witnesses in these areas is not objectionable or inadmissible simply because the opinion might embrace an ultimate issue or question.[2]  The ultimate question to be determined by the jury on the Second Degree Murder charge is whether Ofc. Sutton acted with a conscious disregard of an extreme risk of death or serious bodily injury to Hylton-Brown and whether Ofc. Sutton was the cause of Hytlon-Brown's death.  Not whether Ofc. Sutton had sufficient suspicion to stop Hylton-Brown or any of the other opinions listed above that the government categorizes as impermissible legal conclusions.  The proposed testimony of Ofc. Sutton's experts do not embrace any ultimate issues to be decided by the jury.  Moreover, the experts' opinions as to whether the facts and circumstances necessitated or permitted Ofc. Sutton's course of conduct is not a legal

---

[1]     Ofc. Sutton's experts are also permitted to use the terms probable cause or reasonable suspicion so long as the terms are referred to in a manner that the jury can understand, and are not likely to confuse or mislead the jury to an incorrect understanding of the law. *Huthnance v. District of Columbia*, 793 F.Supp.2d 183, 208 (D.D.C. 2011) (citing *Burkhart*, 112 F.3d at 1212–13).

[2]     The ultimate issues are whether Ofc. Sutton committed Murder in the Second Degree or obstructed justice.  The Government's indictment alleges that Ofc. Sutton abused his police powers in doing so.  Therefore, opinion testimony about police procedures does not embrace the ultimate issue.

conclusion, but rather an opinion as to whether such actions were appropriate under the circumstances.

Mr. Barnard's expert testimony regarding Ofc. Sutton's training relates to constitutional policing standards and tactics authorized by the United States Supreme Court.  The government argues that testimony on this topic is "wholly irrelevant to this case" because there is no constitutional violation charged here.  Ofc. Sutton concedes that the standard of care for the Second Degree Murder charge differs from the standard of care for a constitutional violation; however, expert testimony regarding the standard of care applicable to law enforcement officers under the Constitution is relevant to Ofc. Suttons' state of mind.  Mr. Barnard wishes to provide expert testimony on constitutional policing standards and relevant Supreme Court cases with which MPD officers are taught to comply during their training.  Mr. Barnard does not speculate about Ofc. Sutton's state of mind, but rather provides expert testimony on whether Ofc. Sutton's actions were consistent with constitutional policing standards and practices authorized by the Supreme Court.  Mr. Barnard's opinion is a fact-based opinion that will assist the trier of fact, not an impermissible legal conclusion. Compliance with Supreme Court precedent, which Mr. Barnard should be able to discuss just as he would in a training class, would demonstrate that Ofc. Sutton's conduct was reasonable and did not contravene the standard of care applicable to this case.

The government claims that it will introduce the MPD's pursuit policy into evidence. Thus, the government argues, no expert testimony on the pursuit policy will be necessary because the jury can read it and draw their own conclusions.  (Govt. Mot. *In Limine* [Dkt. No. 219] at 16).  First, we note as we did in our initial brief that such evidence is inadmissible.  In any event, the MPD policy is technical, confusing, and has been amended.  Nor would the jury

be able to appreciate that there is a more applicable policy on Terry stops which should be the norm in this case.  As evidenced by the MPD's adoption of a new policy shortly after the indictment of Ofc. Sutton, the vehicular pursuit policy did not provide MPD officers with appropriate guidelines for assessing and measuring their conduct.

Ofc. Sutton's expert notice and disclosures shows that both Mr. Barnard and Mr. Wear are qualified to provide relevant and reliable testimony regarding the deficiencies of the MPD's pursuit policy.  Mr. Barnard is an expert and educator in policing standards and training, and has trained over 30,000 law enforcement officers on numerous legal topics.  Mr. Barnard has also developed materials on legal topics, and delivered lectures and presentations on those materials at the Federal Law Enforcement Training Center.  Mr. Barnard's opinion that the MPD's pursuit policy is "confusing and inconsistent" is based on the specialized knowledge he has acquired through his legal education, and his experience as a law enforcement educator and trainer.  Hence, Mr. Barnard's opinion is the product of reliable principles and methods, and not his subjective beliefs.

Similarly, Mr. Wear's opinion that Ofc. Sutton's following of Hylton-Brown would not be classified as a police pursuit under the MPD's pursuit policy in effect at the time is also a permissible expert opinion.  Mr. Wear assisted in expanding and developing the MPD programs, and was responsible for overseeing compliance with departmental policy, standards, and practice for the purpose of advising management on best practices.  Mr. Wear also presented vehicle training as a subject matter expert to MPD personnel.  Like the opinion proffered by Mr. Barnard, Mr. Wear's opinion is based on his experience and knowledge.  Mr. Wear has first-hand knowledge as to the training provided to MPD officers on departmental policy, standards,

and practices, with an expertise in the MPD's policies, standards, and training on operation of police vehicles.

Both Mr. Barnard and Mr. Wear should be permitted to provide expert testimony that shows the pursuit policy was unclear and offered insufficient guidance to MPD officers. Their expert testimony will not only assist the trier of fact in understanding the particulars of police pursuits and the MPD's pursuit policy, but it will assist them in understanding the pursuit policy that impacted Ofc. Sutton's actions. Even if this testimony embraces an ultimate factual issue, it does not provide any impermissible legal conclusions. Rather, it offers the experts' opinions on factual issues that the jury may reference and consider when making ultimate legal conclusions.

Even if this Court were to determine that the Sgt. Brennan, Mr. Barnard, and Mr. Wear's proffered testimony is inadmissible because it would not assist the jury or is irrelevant, the Court should allow the testimony as a form of rebuttal evidence. The government explicitly and impliedly alleges that Ofc. Sutton violated MPD policies and District of Columbia traffic law through his actions on the night of the incident. Specifically, the government has argued that Ofc. Sutton's alleged violation of the MPD's pursuit policy serves as evidence of his conscious disregard of an extreme risk of death or serious bodily injury to Hylton-Brown, which is an element of the Second Degree Murder charge. (Govt. Reply in Supp. of Mot. to Disqualify [Dkt. No. 45] at 2-3). By introducing the MPD's pursuit policy as a basis for the Second Degree Murder charge, the Government cannot complain about the presentation of expert testimony on whether a pursuit occurred, whether a *Terry* stop was in action, and whether Ofc. Sutton's "driving decisions" were consistent with police and the law.

"When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005). "Rebuttal

14

evidence is evidence which attempts to 'disprove or contradict' the evidence to which it is contrasted." *Id*. Here, Sgt. Brennan, Mr. Barnard, and Mr. Wear's expert testimony will provide important information regarding the MPD's policies and training, and will be used to rebut the government's argument that Ofc. Sutton violated the MPD's policies and training when taking certain actions on the night of the incident.

**B.  The Experts' Testimony Does Not Provide Inadmissible State-of-Mind Evidence.**

The proposed testimony of Ofc. Sutton's expert witnesses will also assist the jury in *evaluating* Ofc. Sutton's actions and determining his state of mind.  Whether an officer complied with his training or departmental policies can assist in determining the officer's state of mind under particular circumstances.  *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019).  "If, for example, an officer has been trained that officers should do certain things when confronted with tense situations, and he does those things, the fact that he acted in accordance with his training could make it less likely that he acted willfully.  And vice versa..." *Id*.  Ofc. Sutton's experts' testimony on whether Ofc. Sutton's actions were in compliance with MPD policies and training is relevant because it will assist the jury in understanding Ofc. Sutton's state of mind when he initially attempted to contact and stop Hylton-Brown, and then followed Hylton-Brown. This will show what Ofc. Sutton knew he was permitted and not permitted to do on the night in question.

The government argues that certain portions of Sgt. Brennan, Mr. Barnard, and Mr. Wear's testimony seek to introduce prohibited state-of-mind evidence that is inadmissible under Fed. R. Evid. 704(b).  Expert testimony is not automatically objectionable or inadmissible just because it embraces an ultimate issue.  Fed. R. Evid. 704 only prohibits expert testimony "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  The Second Circuit further clarified

15

that "Rule 704(b) does not prohibit all expert testimony that gives rise to an inference concerning a defendant's mental state.  The ... rule ... means that the expert cannot expressly 'state the inference,' but must leave the inference, however obvious, for the jury to draw."  *United States v. Grady*, 645 Fed. Appx. 1, 4 (2d Cir. 2016) (unpublished) (quoting *United States v. DiDomenico*, 985 F.2d 1159, 1165 (2d Cir.1993) (citation omitted).

The expert testimony of Sgt. Brennan, Mr. Barnard, and Mr. Wear does not violate Fed. R. Evid. 704 because it does not explicitly state whether or not Ofc. Sutton had the requisite mental state for any of the crimes charged.  Each of the experts has made clear that his opinion on whether Ofc. Sutton complied with standard police practices and the MPD's policies and training is based on his experience and knowledge, and not on specific knowledge as to whether Ofc. Sutton knew or thought he was complying with those standard practices or the policies and training.

Similarly, their opinions on whether Ofc. Sutton had reason to believe that his conduct would be scrutinized by the United States Attorney's Office or that he had no reason to believe he would face criminal charges is also admissible testimony.  The government alleges that the following portions of testimony from Ofc. Sutton's expert witnesses is impermissible because it seeks to improperly establish Ofc. Sutton's state of mind on the obstruction of justice and conspiracy charges: (1) that Ofc. Sutton's draft police report was an appropriate presentation of what he knew; (2) that Ofc. Sutton knew that hsi report would not be final until reviewed by his chain of command; (3) that Ofc. Sutton had no reason to believe any of his conduct would be scrutinized by the United States Attorney's Office; (4) that Ofc. Sutton had no reason to believe that he would face criminal charges; (5) that Ofc. Sutton could not have engaged in a conspiracy to thwart a federal civil rights investigation because officers do not understand policy violations

16

to lead to criminal liability; (6) that nothing Ofc. Sutton did could legitimately be characterized as negligent or grossly negligent as he would have understood those terms from his training; (7) that MPD officers are not trained or taught that the conduct alleged in the Indictment could subject them to criminal prosecution; and (8) that Ofc. Sutton had no reason to believe he would be subjected to criminal charges for any of the actions he took.

None of the above-referenced testimony proffered by Ofc. Sutton's experts violates Fed. R. Evid. 704(b).  The experts do not share their opinion as to Ofc. Sutton's subjective thoughts and state of mind, but rather opine as to whether such conduct was consistent with standard police practices and the MPD's policies and training.  This testimony will assist the jury in understanding the actions and course of conduct MPD officers are expected to take under the same circumstances based on their training and the applicable policies and procedures.  It will also be relevant and useful for rebutting the presumptive and speculative allegations the government made in the Indictment regarding the duties Ofc. Sutton owed to Hylton-Brown and his obligations post-accident.

The government has implied that Ofc. Sutton violated some unspoken procedures or policies through his post-accident conduct; however, there are no applicable policies or procedures that obligated Ofc. Sutton to act in a certain way after the traffic collision.  Ofc. Sutton's training and duties did not compel him to act in the manner that the government suggests in the Indictment, and Ofc. Sutton should be permitted to offer the proffered testimony of his expert witnesses to prove that he had no such obligations.

**WHEREFORE**, Ofc. Sutton respectfully requests that this Court deny the government's motion in limine to exclude inadmissible expert testimony of Ofc. Sutton's expert witnesses and for an evidentiary hearing.

Dated: August 22, 2022                    Respectfully submitted,

                                          HANNON LAW GROUP, LLP

                                          ___*s/J. Michael Hannon*___
                                          J. Michael Hannon, #352526
                                          Rachel E. Amster, #1618887
                                          Harrison E. Richards, #1723607
                                          1800 M Street, N.W., Suite 850 S
                                          Washington, DC 20036
                                          Tel: (202) 232-1907
                                          Fax: (202) 232-3704
                                          jhannon@hannonlawgroup.com
                                          ramster@hannonlawgroup.com
                                          hrichards@hannonlawgroup.com

                                          *Attorneys for Defendant Terence D. Sutton, Jr.*