UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-598-PLF |
| | : | |
| v. | : | |
| | : | |
| TERENCE SUTTON and | : | |
| ANDREW ZABAVSKY | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE*
TO EXCLUDE INADMISSIBLE EXPERT TESTIMONY**

The United States, by and through its undersigned attorneys, respectfully submits this Reply in Support of its Motion *In Limine* to exclude inadmissible expert testimony. The defendants' opposition to the government's motion continues to seek the admission of irrelevant, inadmissible testimony, including inapplicable constitutional legal standards and inadmissible legal opinions. These responses also seek to obfuscate, post-hoc, the plainly inadmissible content in their expert disclosures by simply re-characterizing it in their opposition papers; such efforts are inadequate to render these opinions admissible. Finally, defendant Sutton's attempt to blame the government for his own inadequate disclosure of Thomas Langley's opinion completely misstates the record and provides no excuse for the disclosure's gross deficiencies. For the reasons given below and in the government's opening brief [ECF 219], the government's motion should be granted.

**ARGUMENT**

**A. The Defendants Continue To Seek Admission of Inadmissible Legal Opinions**

Despite the plain irrelevance of constitutional law to this case and the clear bar on legal opinion testimony in this Circuit, the defendants continue to assert that expert testimony "on compliance with dictates of the Supreme Court related to search and seizure, pursuits, and the use

1

of force," Sutton Mot. at 6, as well as "legal concepts like reasonable suspicion and probable cause, law enforcement tactics such as *Terry* stops or pursuits," Sutton Mot. at 7, are areas is admissible expert opinion. Sutton Mot. at 6. This is meritless, for three reasons.

First, for reasons that have been exhaustively discussed in prior briefing and explained in detail in the Court's ruling on defendant Sutton's motion to dismiss Count 1 of the Indictment, evidence concerning "the dictates of the Supreme Court" relating to policing tactics are wholly irrelevant to this case. There is no constitutional violation charged here, nor is one required. Opinion and Order, ECF 215. As such, any discussion of constitutional standards and attendant case law is irrelevant and will mislead the jury about the legal standards that apply in this case. And, even if it were relevant (which it is not), such information would be for the Court to provide in its legal instructions, not through expert witnesses, and certainly not through several of the proposed defense experts who have no legal training at all.

Second, the D.C. Circuit has been clear that legal conclusions are inadmissible under Fed. R. Evid. 704. *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212 (D.C. Cir. 1997). Testimony constitutes inadmissible legal opinion if "the terms used by the witness have a separate, distinct, and specialized meaning in the law different from that present in the vernacular." *Id*. (citing with approval *Torres v. County of Oakland*, 785 F.2d 147, 151 (6th Cir. 1985), in which expert testimony was deemed inadmissible legal opinion under Rule 704 where "it tracked the language of the applicable statute" and certain terms used in the testimony—in that case, "discrimination"—had "a specialized legal meaning that is more precise than the lay understanding of the term"). Moreover, an expert "may not testify as to whether the legal standard has been satisfied." *Id*. at 1213. Regardless, testimony that flies in the face of these rules is exactly what the defense has proffered in their expert notices: that defendant Sutton "had cause to conduct

a *Terry* stop of Hylton-Brown," (Brennan); that "Officer Sutton did not seize Hylton-Brown or use force against him in any way, as defined by Supreme Court precedent," (Barnard); that defendant Sutton "acted in accordance with . . . legal standards" during the pursuit of Hylton-Brown (Wear); and that the defendants' conduct "did not hinder or obstruct the investigation" (Dahlquist), to name several examples.[1]  This testimony is inadmissible under Rule 704 and should be excluded.[2]

Finally, the defendant's claims that testimony on these topics is necessary because "the underlying facts in this case are beyond the ken of the average juror," Sutton Mot. at 6, and that such testimony is required "to present a complete defense," Sutton Mot. at 9, is simply not true, nor do these claims overcome the inadmissible nature of the proffered opinions.  The facts in this case are straightforward:  defendant Sutton used his police car to chase a helmetless civilian on a moped, and is alleged to have done so in a dangerous fashion that consciously disregarded risks the defendant had been trained to recognize.  The chase caused a crash with a third, uninvolved car that killed the moped driver.  Afterward, defendant Sutton and his supervising officer, defendant Zabavsky, are alleged to have conspired to cover up the facts of the incident to forestall

---

[1] The complete set of these inadmissible legal conclusions is discussed in depth in the government's opening brief [ECF 219] and for the sake of brevity will not be rehashed; the government incorporates by reference those arguments here.

[2] Defendant Sutton's citation to *Huthnance v. District of Columbia*, 793 F.Supp.2d 183, 208 (D.D.C. 2011), Sutton Mot. at 11 n.1, for the proposition that, under *Burkhart*, an expert may use terms such as "probable cause" without offending this rule "so long as he or she uses them in a manner that is readily understood by the jury and not likely to cause confusion or lead the jury to an incorrect understanding of the law" does not change this analysis.  The defendants' proposed experts do not merely discuss such legal terms; they use them to draw express legal conclusions, which is prohibited.  Moreover, at least one other Court within this District has disagreed with *Huthnance* and excluded such testimony, finding that where the "proper interpretation of [the evidence] is hotly disputed . . . the experts' opinions regarding probable cause may unduly influence the jury's analysis" of that evidence, and it should therefore be excluded.  *Sherrod v. McHugh*, 334 F.Supp.3d 219, 272-73 (D.D.C. 2018); *id.* (distinguishing *Huthnance* because in that case "the experts drew their conclusions based on factual records that were relatively settled").

a federal investigation into the matter. Nothing about these facts lies so far outside the abilities of an average juror to understand that expert testimony of the type proposed by the defendants would be warranted or helpful even if it were admissible under the Rules and applicable case law. *Cf. United States v. Libby*, 461 F.Supp.2d 3, 12-13 (D.D.C. 2006) (excluding expert testimony concerning memory and cognition because "[a]lthough the average juror may not understand the scientific basis and labels attached to causes for memory errors, jurors inevitably encounter the frailties of memory as a commonplace matter of course," and collecting cases). That the defendants want to use this evidence as part of their defenses also does not serve to overcome the proscriptions of the Federal Rules of Evidence and relevant case law. Having provided no ground upon which this testimony is admissible, it must be excluded.

> **B. The Defendants' Efforts to Re-Characterize The Content of Their Expert Disclosures Does Not Transform Inadmissible Expert Opinions Into Admissible Evidence**

In an effort to avoid addressing the wholly impermissible opinions described in their expert disclosures, the defendants' opposition papers seek to instead belatedly re-style those opinions as potentially admissible testimony. For instance, defendant Sutton asserts that his experts' "proposed testimony on police practices and the MPD's policies and training present no risk in misleading the jury," Sutton Opp. at 7, and that "[e]xpert testimony on the relevant laws, policies, training, and police practices would aid the jury . . . with evaluating Ofc. Sutton's conduct in this particular instance." Sutton Opp. at 9. Defendant Zabavsky's opposition similarly claims that his expert "will assist the jury . . . by interpreting the police procedures and applying those procedures to the facts of this case." Zabavsky Opp. at 6. The government does not dispute that testimony concerning such topics would potentially constitute relevant evidence; indeed, as the defendants point out, the government's noticed experts will provide testimony in some of those same areas.

Significantly, however, this characterization of the defense experts' opinions is merely a superficial rebranding of those witnesses' inadmissible opinions that is belied by the expert notices themselves.

In addition to the inadmissible legal opinions they seek to advance, the defendants' expert notices were replete with opinions that included inadmissible state of mind evidence under Rule 704(b), irrelevant and misleading testimony, improper character evidence under Rule 404(a), opinions that lie beyond the scope of the witnesses' expertise, and opinions on matters for which no expert testimony is appropriate. Several examples taken from the defendants' expert disclosures are listed below:[3]

- Inadmissible state of mind evidence:
    - that "Officer Sutton had no reason to believe that any of his conduct would be scrutinized by the United States Attorney's Office before he learned Hylton-Brown was unlikely to survive" (Brennan);
    - that defendant Sutton "could not have [] engaged in a conspiracy to thwart a federal civil rights investigation because officers do not understand policy violations lead to criminal liability" (Barnard);
    - that defendant Sutton "would not have understood based on the facts contained in the indictment" that he could be charged with obstruction (Barnard);
    - that that "Officer Sutton had no reason to believe he would be subjected to criminal charges for any of the actions he took" (Wear);

---

[3] The full explanations concerning the inadmissibility of these opinions, and the other objectionable opinions disclosed in the defendants' expert notices, is provided in the government's opening brief [ECF 219].

- o that both defendants "were aware that their body cameras, as well as those of multiple officers at the scene, had recorded evidence sufficient to document the incident and scene" (Dahlquist).

- Irrelevant and/or misleading testimony:
    - o that no criminal case has ever been brought "against an MPD officer who did not inflict a fatal injury on a subject" (Brennan);
    - o that Mr. Barnard "has never seen such a case prosecuted criminally in his entire career" (Barnard);
    - o that "[c]onspiracy to obstruct justice requires that officers knew there would be a Department of Justice investigation" (Barnard);
    - o that "none of the actions taken by Officer Sutton described in the indictment as part of the conspiracy to obstruct justice are prohibited by MPD policy" (Barnard);
    - o that Mr. Wear "has never seen a case like the one charged in the Indictment in his entire career" (Wear);
    - o that "during [Mr. Dahlquist's] career, he was notified of multiple crashes which resulted in serious injury or death well after the collision was investigated by a patrol officer and the scene completely cleared . . . due to the on-scene officers believing that the known injuries were not life-threatening" (Dahlquist).

- Inadmissible character evidence: that defendant Sutton is "one of the most experienced and honored CST officers within MPD" (Brennan).

- Testimony Beyond the Scope of the Witness's Expertise or Knowledge:

- o that prior to this incident Hylton-Brown had been observed arguing "with another [drug] dealer" and that officers "feared his return" to the area (Brennan);

- o that under the circumstances at the crash scene the defendants "may not have understood the seriousness" of Hylton-Brown's injuries (Dahlquist).

- <u>Testimony for Which No Expert Testimony Is Needed:</u>

  - o that the MPD vehicular pursuit policy "was confusing and inconsistent" (Barnard);

  - o that under MPD vehicular pursuit policy "activating the lights and sirens on an emergency vehicle does not immediately or automatically constitute a vehicular pursuit" (Wear);

  - o that the evidence at the crash scene "indicated Mr. Hylton-Brown's visible injuries were minimal. Human biological material at the scene appears to be vomit and not blood. It did not appear that officers or fire department responders were engaged in cardiopulmonary resuscitation" (Dahlquist).

For the reasons explained in the government's opening brief, none of these opinions (and many more) are admissible, yet the defendants' opposition papers do not address these serious defects. Merely asserting, in briefing, that their experts will testify about general principles and practices of policing does not make it so when the plain language of their expert disclosures state otherwise. The defendants' efforts to downplay the wholly inadmissible opinions they have proffered in an effort to put objectionable evidence before the jury should be rejected.

### C. Defendant Sutton's Inadequate Expert Notice for Crash Reconstructionist Thomas Langley Renders His Opinion Inadmissible Under Rule 16(b)(1)(C)

Finally, defendant Sutton seeks to defend his wholly inadequate expert disclosure for Thomas Langley—which, instead of providing Mr. Langley's opinions instead listed topics on which he may later opine—by blaming the government. Sutton Opp. at 5 ("it was the government's delay that prevented Mr. Langley from having his report prepared on time"). This entirely misstates the record and provides no excuse for the grossly deficient notice.

Any fault for Mr. Langley's failure to complete an expert report by the July 15, 2022 deadline rests entirely with the defense. As noted in the government's opening brief, the defendant consented to the July 15, 2022, expert disclosure deadline while knowing that vehicle inspections would occur during the last week of June 2022: the government notified the defense on April 26, 2022, about this timing for the inspections, and several weeks later, on May 16, 2022, the defense consented to the July 15, 2022 expert disclosure date and jointly proposed it to the Court for the pretrial schedule. ECF 167 (joint status report). These deadlines were in service of an October 17, 2022, trial date that the defendant had advocated for at the May 2, 2022 status hearing before the Court. *See* ECF 163 (status report discussing the defendant's proposed October 17, 2022 trial date); ECF 164 (joint status report jointly proposing that the Court adopt a October 17, 2022 trial date). The defendant never asked for any modification of the July 15, 2022 expert disclosure deadline at any point.

Given that the July 15, 2022, disclosure deadline was jointly proposed at a time when the defendant was on notice that Mr. Langley could not inspect the vehicles until the last week of June, there is no excuse for a deficient notice concerning his opinions. On July 1, 2022 the defense emailed the government to say that additional requests for information concerning the defendants' vehicles would be forthcoming, but the defense did not submit any such request until August 4,

8

2022—more than one month later, and several weeks after the expert disclosure deadline had passed. While the defendant now accuses the government of taking too long to respond to the August 4, 2022 requests, Sutton Mot. at 5, this is entirely beside the point.[4] The defendant did not adequately provide a complete expert disclosure on July 15, 2022 despite proposing that deadline himself, and despite knowing for months that the vehicle inspections would take place during the last week of June.[5] Any blame for Mr. Langley's inability to complete his report in that timeframe rests with the defendant, not the government.

Given these facts and the defendant's woefully inadequate disclosure for Mr. Langley's opinions, Rule 16(b)(1)(C) provides a sufficient basis to exclude his testimony in full. The defendant's failure to comply with the Rule's basic requirements renders the government entirely unable to challenge Mr. Langley's opinions in pre-trial litigation or prepare for any pertinent cross-examination at a *Daubert* hearing or at trial. This undermines the entire purpose of the Rule's disclosure requirements: to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity

---

[4] The defense submitted 31 additional discovery requests in its August 4, 2022 letter. The government responded to the vast majority of these requests on August 19, 2022 and provided the remaining outstanding information on August 25 and 26, 2022.

[5] The defendant also incorrectly asserts that the vehicle inspections were timed for the end of June because MPD inadvertently sold defendant Sutton's car at auction in the spring of 2022. That is not true. At the end of April 2022, the parties jointly agreed upon the date for the inspections. On June 8, 2022, the government learned of the mistaken sale of defendant Sutton's vehicle. Upon learning that information, the government took immediate efforts to ensure that MPD re-purchased the vehicle and it was made available for inspection on the previously agreed-upon date at the end of June. In short, the inadvertent sale of the car ultimately had no effect whatsoever on the previously agreed-upon timing or the defense expert's inspection of it. Nonetheless, because the government learned of the sale only weeks before the planned inspection date, the government disclosed all of these dates and developments to the defense to be fully transparent about these facts, in case the defense would have additional discovery demands before the inspections or assess a need to postpone them. For the defense to now claim otherwise misstates the record about the government's diligent and timely efforts.

to test the merit of the expert's testimony through focused cross examination." Fed. R. Crim. P. 16, Advisory Committee Notes (1993); *see Day*, 524 F.3d at 1372 (discussing this rule, and excluding criminal defendant's expert due to inadequate Rule 16 disclosures). The fault for this deficient expert notice rests entirely with the defendant, and Mr. Langley's opinion should be excluded on the ground of this wholly deficient notice alone. *See Day*, 524 F.3d at 1370-71.

## CONCLUSION

The defendants seek to elicit inadmissible opinion testimony from five noticed expert witnesses. For the reasons given above and in the government's moving brief [ECF 219], the Court should exclude these inadmissible opinions outright under Fed. R. Evid. 702, 703, 704, 401, 403, and 801(c) and Fed. R. Crim. P. 16(b)(1)(C). Alternatively, the Court should subject these witnesses to a *Daubert* hearing to further assess the admissibility of this testimony.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: */s/ Risa Berkower*
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
GAURI GOPAL
PA Bar No. 306718
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7097 (Baset)
       (202) 252-6782 (Berkower)
       (202) 730-6624 (Gopal)
Email: Ahmed.Baset@usdoj.gov
       risa.berkower@usdoj.gov
       gauri.gopal@usdoj.gov