UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-598-PLF |
| | : | |
| v. | : | |
| | : | |
| TERENCE SUTTON and | : | |
| ANDREW ZABAVSKY, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT SUTTON'S MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE REGARDING THE METROPOLITAN POLICE
DEPARTMENT'S GENERAL ORDER ON VEHICULAR PURSUITS**

Asserting once again that he is above the law for any conduct that does not violate the U.S. Constitution, defendant Sutton seeks to prevent the jury from learning that Metropolitan Police Department (MPD) policy expressly prohibits officers from engaging in vehicular pursuits for mere traffic violations. Because this evidence is highly relevant to the charges before the jury—in particular, the defendant's subjective state of mind when he chose to chase Karon Hylton-Brown on a moped for minor traffic infractions—the motion should be denied.

**I.    ARGUMENT**

The defendant asserts that the MPD vehicular pursuit policy, General Order 301.03, should be excluded from evidence at trial in this case because, he claims, (1) MPD general orders are not admissible evidence in a criminal case, and (2) only constitutional legal standards can dictate his criminal liability. Because this policy—and specifically the defendant's knowledge of this policy—speaks directly to the *mens rea* the government must prove to establish Second Degree Murder as charged in Count 1, evidence concerning these matters is highly relevant and admissible. The defendant's attempt to wall off the jury from this significant evidence are meritless, and his motion should be denied.

1

### a. The MPD Vehicular Pursuit Policy Is Admissible to Show the Defendant's State of Mind

The defendant claims that the MPD vehicular pursuit policy has no "logical relevance . . . to the facts alleged in the Indictment," and asserts that cases cited in prior filings by the government do not "address[] whether violation of a general order is *admissible*" to prove second-degree murder; based on this, the defendant argues that all evidence of the policy is inadmissible at trial. ECF 260 at 2-3 (emphasis in original). Because the anticipated evidence concerning the vehicular pursuit policy speaks directly to the defendant's state of mind—an essential element the government must prove to establish the second-degree murder charge in Count 1—these arguments provide no basis to exclude this evidence.

To prove Count 1, the government must prove that the defendant acted with malice aforethought. As this Court has explained, this element is satisfied if the government proves that the defendant "subjectively knew that his conduct 'created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless.'" Opinion, ECF 159, at 20 (quoting *Williams v. United States*, 858 A.3d 984, 998 (D.C. 2004)). This element may also be established by proof that the defendant's conduct was "'reckless and wanton, and a gross deviation from a reasonable standard of care, or [of] such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm.'" Opinion, ECF 159, at 21 (quoting *Comber v. United States*, 584 A.2d 26, 39 (D.C. 1990) (*en banc*)).

Here, the government anticipates presenting exactly this type of evidence to prove malice aforethought: evidence that shows the defendant subjectively knew that the driving decisions he made on the night of this chase were highly unsafe and created serious risks to Hylton-Brown. This will include evidence concerning the driver training that MPD requires all officers to pass

before they may operate an MPD vehicle.[1]  This encompasses instruction on vehicle dynamics to ensure the safe operation of the MPD vehicles, as well as the MPD vehicular pursuit policy, which addresses when officers may engage in vehicular pursuits (only in limited circumstances involving recent or imminent violence, because of the serious risks vehicular pursuits create), how to safely engage in vehicular pursuits (including, among other things, the continual use of emergency lights and sirens to alert everyone nearby of the imminent danger), as well as the reasons for these requirements—all of which are based in safety.  This evidence is relevant to the defendant's subjective knowledge concerning the risks of engaging in a vehicular pursuit, the lessons he was taught about how to do so safely, and whether he consciously disregarded these known risks during his pursuit of Hylton-Brown, and/or whether his conduct was of "such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm."  *See* Opinion, ECF 159, at 21 (quoting *Comber*, 584 A.2d at 39).  Because evidence concerning the vehicular pursuit policy will be tied to the defendant's subjective knowledge of the risks he was aware of, and disregarded, when he chased Hylton-Brown—that is, malice aforethought—this evidence is highly probative of an essential element of Count 1.

Despite the clear probity of this evidence, the defendant has identified no basis under the Federal Rules of Evidence to exclude it.  The defendant's claim that the government seeks to use this evidence to "lower to bar to prosecute a police officer . . . based on an alleged violation of a police policy," ECF 260 at 4, is simply not correct.  Evidence concerning the vehicular pursuit

---

[1] The government anticipates presenting this evidence through two of the witnesses identified in its expert disclosure, MPD driving instructor Carolyn Totaro and former MPD driving instructor Mark Hammond, as discussed at the September 1, 2022 *Daubert* hearing.  The government incorporates by reference the arguments advanced at that hearing, and in related briefing concerning these witnesses, ECF 219 and 246, which further demonstrate the relevance of this policy and training evidence.

3

policy, and the defendant's knowledge of the policy, will be offered by the government as proof of the defendant's subjective knowledge of known risks, not as a proxy for criminal liability overall. Regardless, any potential confusion on this point would be best addressed with an appropriate jury instruction, rather than wholesale exclusion of highly probative evidence.[2]

Finally, the defendant's claim that the Court should simply disregard the D.C. Court of Appeals cases that permit the jury, in civil tort cases against MPD officers, to consider the officer's non-compliance with MPD policies to evaluate the officer's negligence, misses the point of those holdings. In those cases, just as in the instant case, the jury must assess the officer's subjective knowledge and decision-making, and the D.C. Court of Appeals has ruled that the officer's compliance with the officer's employer's policies are relevant to that assessment. *See Tillery v. District of Columbia*, 227 A.3d 147, 152 n.17 (D.C. May 21, 2020) ("A violation of an MPD General Order, we have said, is a factor the jury can consider in determining whether the officer was grossly negligent in departing from the standard of care." (quotation marks omitted)); *District of Columbia v. Hawkins*, 782 A.2d 293, 391 (D.C. 2001); *Duggan v. District of Columbia*, 783 A.2 563, 568-69 (D.C. 2001), *vacated for rehearing en banc*, 797 A.2d 1233, *decision reinstated in relevant part*, 884 A.2d 661; *District of Columbia v. Walker*, 689 A.2d 40 (D.C. 1997) (same).

---

[2]The defendant's additional claim that his "survey of District of Columbia cases involving 'depraved heart' murder in the second degree . . . have so far found only one case that does not involve the use of guns, knives, or weapons to inflict death upon the victim," ECF 260 at 6, is irrelevant. In *Fleming v. United States*, the D.C. Court of Appeals rejected any requirement that the defendant "inflict" an injury on the decedent in homicide cases, and instead ruled that a defendant may be liable for second degree murder so long as he is the actual and proximate cause of the victim's death, regardless of whether he personally "inflicted" the death as the final link in a causal chain. *Fleming v. United States*, 224 A.3d 213, 220 (D.C. 2020) ("If the [defendant's] formulation is meant to foreclose homicide liability whenever the action of someone other than the defendant more directly inflicts the fatal physical injury on the decedent, then the formulation is contrary not only to the considerations already noted but also the holdings of several of our cases.").

4

The same reasoning applies here: because the defendant's subjective knowledge of the MPD vehicular pursuit policy informs whether his decision making on the night of Hylton-Brown's death disregarded known risks (or was so reckless that such conscious disregard may be inferred), this evidence is highly relevant to the jury's assessment of malice aforethought.  *Cf. Fleming*, 224 A.3d at 226 (noting, with regard to proximate causation, that "although tort law is informative rather than dispositive in the criminal context, widely accepted principles of tort law are to the same effect" (citation omitted)).  Having identified no basis upon which to exclude this evidence, the defendant's motion should be denied.

### b. The Defendant Is Not Immune to Prosecution for Violating the District's Criminal Laws, and His Reliance on Inapposite Federal Cases Is Misguided

Recycling similar arguments advanced in his two motions to dismiss Count 1, the defendant claims that the MPD vehicular pursuit policy is inadmissible because "the only standard upon which the jury can evaluate his conduct is that applicable to every law enforcement officer in the United States, *Graham v. Connor*." ECF 260 at 7.  This argument fails both because the defendant is not above the District's criminal laws, and because it misapprehends the highly relevant purpose for which evidence of the vehicular pursuit policy will be offered—proof of the defendant's subjective state of mind.  Indeed, despite the defendant's misplaced reliance on federal constitutional case law, policy and training evidence is routinely used to prove *mens rea* in a similar fashion in federal prosecutions under 18 U.S.C. § 242.  His motion should be denied.

First, for the reasons explained in numerous briefs, oral arguments, and in the Court's ruling on the defendant's motion to dismiss, the defendant may be prosecuted for his conduct that violates the District's criminal laws of general applicability, regardless of whether he is also alleged to have violated the Constitution.  *See* Government's Opposition to Defendant Sutton's Fifth Motion to Compel Disclosure of Requested Discovery (ECF 165); Government's Omnibus

5

Opposition to Defendants' Motions to Dismiss (ECF 206); Transcript of Motions Hearing 7/26/22 (ECF 213); Transcript of Oral Ruling on Motions to Dismiss 8/3/22 (ECF 217); Memorandum Opinion and Order (ECF 215); Government's Opposition to Defendant Sutton's Motion to Reconsider Ruling Denying Motion to Dismiss (ECF 263). This includes the second-degree murder charge in Count 1. Memorandum Opinion and Order, ECF 215, at 3. The defendant's contention, therefore, that the jury may only assess his conduct according to the constitutional "standard" set in *Graham v. Connor* is simply incorrect. Because constitutional standards are not at issue here, that body of case law is immaterial to the admissibility of the MPD vehicular pursuit policy in this case.

Second, the defendant's argument misapprehends the purpose for which this evidence will be offered. Contrary to the defendant's claim, the government will not offer this evidence to establish the legal standard for second-degree murder. Rather, as explained in part I.a *supra*, evidence concerning the MPD vehicular pursuit policy, and the defendant's subjective knowledge of it, will be offered to show his state of mind and knowledge of the risks inherent to engaging in vehicular pursuits and to the driving decisions he made when he pursued Hylton-Brown. This is directly relevant to proving malice aforethought, a required element of Count 1. The defendant's motion provides no basis for excluding this evidence when offered for this purpose.

Finally, the defendant misconstrues the significance of the federal constitutional case law upon which he relies. The defendant asserts that several Circuits have ruled, either in a criminal prosecution under 18 U.S.C. § 242 or in a civil action under 42 U.S.C. § 1983, that a police department's internal policies are inadmissible to prove the reasonableness of the officer's actions under the Fourth Amendment to the U.S. Constitution. *See* ECF 260 at 7-10 (discussing these cases). Those rulings are of no moment here, where no Fourth Amendment violation is alleged in

the Indictment. Far more significantly, however, that same body of case law routinely permits the introduction of evidence concerning police department policies and training for the exact same purpose for which this evidence is offered here: to prove the defendant's state of mind. In a § 242 prosecution (but not in a civil action under 42 U.S.C. § 1983) the government must prove that the defendant officer acted *willfully* to violate the victim's constitutional rights. *See* 18 U.S.C. § 242 ("whoever, under color of law, . . . *willfully* subjects any person. . . to the deprivation of any rights, privileges or immunities secured or protected by the Constitution. . . [shall be guilty of an offense]" (emphasis added)). Evidence that a police officer was trained on his department's policy, and the substance of what that policy permits or prohibits, is regularly admitted to prove the officer's subjective state of mind—that is, whether he acted to willfully violate the law. *See, e.g.*, *United States v. Brown*, 934 F.3d 1278, 1296-97 (11th Cir. 2019) (affirming § 242 conviction where defendant's non-compliance with his use of force training supported jury's finding of willfulness); *United States v. Proano*, 912 F.3d 431, 439, 444-45 (7th Cir. 2019) ("We have before recognized that evidence of departmental policies can be relevant to show intent in § 242 cases. . . . [A]n officer's training can help inform his state of mind in certain circumstances. . . . If, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully."); *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017) (finding police department's policy evidence was properly excluded for purposes of establishing reasonableness under the Fourth Amendment, but holding that "a per se rule against expert testimony about police policy or procedure is particularly inappropriate in criminal cases" under § 242 because such evidence is relevant to willfulness); *United States v. Rodella*, 804 F.3d 1317, 1337-38 (10th Cir. 2015) (affirming § 242 conviction where government used vehicular pursuit

7

training evidence, and defendant's non-compliance with that training, to prove willfulness). Accordingly, while the body of case law arising under § 242 addresses a different type of criminal conduct than that charged here (willful constitutional violations under color of law, rather than violations of the District's second-degree murder statute), those cases certainly provide no legal authority to bar the admission of similar *mens rea* evidence in the instant case. Indeed, far from supporting the exclusion of such evidence, by analogy this body of case law supports its admission as proposed by the government here. The defendant's reliance on these cases is both inapposite for the purpose he asserts and misguided as to the actual significance of those decisions in this context. His motion should be denied.

## II. CONCLUSION

For the reasons given above, the defendant's motion *in limine* to exclude evidence of MPD's vehicular pursuit policy [ECF 260] should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        DC Bar No. 481052

By:   */s/ Risa Berkower*
       AHMED BASET
       IL Bar No. 6304552
       RISA BERKOWER
       NY Bar No. 4536538
       Assistant United States Attorneys
       U.S. Attorney's Office for the District of Columbia
       601 D St., N.W.
       Washington, D.C. 20532
       Phone: (202) 252-7097 (Baset)
             (202) 252-6782 (Berkower)
       Email: Ahmed.Baset@usdoj.gov
             risa.berkower@usdoj.gov