UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 21-cr-598-PLF |
| TERENCE SUTTON and : | |
| ANDREW ZABAVSKY, : | |
| : | |
| Defendants. : | |

### REPLY IN SUPPORT OF GOVERNMENT'S MOTION IN LIMINE
### TO EXCLUDE INADMISSIBLE DEFENSE WITNESS TESTIMONY

The Government has asked the Court to limit the testimony of proposed defense witnesses MPD Senior Sergeant Brian Bray and Dr. Samantha Tolliver with the Office of Chief Medical Examiner (OCME) for the District of Columbia. ECF No. 374. Specifically, the Government has moved to exclude Sergeant Bray's commentary at the crash scene that, "if Hylton-Brown were to die, it's going to be a criminal declination." At bottom, it is based on incomplete facts, is irrelevant to jurisdiction or any other issue in this case, and constitutes an opinion about a legal conclusion for the jury to decide. The Government also opposes any testimony from Dr. Tolliver (1) mentioning the existence of substances not included in the OCME toxicology report, such as "benzodiazepine;" and (2) opining about the physical effects of the substances purportedly consumed by Hylton-Brown on the day of his death, including any impact on his ability to drive a moped. For the reasons set forth below, and in the Government's motion, the testimony of these two witnesses should be either excluded (Sergeant Bray), or limited (Dr. Tolliver) as the government proposes.

1

**I.      MPD Senior Sergeant Brian Bray's Commentary has No Bearing on This Court's Jurisdiction**

Defendant Sutton argues that Sergeant Bray's testimony that he expected a "declination,"[1] is relevant and probative because it is critical to whether there is a jurisdictional basis for this case to be in federal court. That is simply incorrect. Sergeant Bray's proposed testimony is irrelevant, self-serving hearsay if offered by the Defendants. It also confusingly suggests that a legal conclusion had already been made to decline any criminal prosecution of this matter where there had been none, and it incorrectly implies that Sergeant Bray himself was in a position to make such a legal determination, when in fact he was not.

This case is in federal court because, upon referral of this matter from MPD IAD, the government investigated a possible federal civil rights violation. Nothing within the scope of Bray's testimony could change that fact. As IAD Agent Joseph Della Camera explained in his trial testimony, whenever there is an officer involved death or officer involved serious injury a referral is made to the Public Corruption and Civil Rights Section of the U.S. Attorney's Office for the investigation of possible criminal conduct by officers, including federal civil rights crimes. 11/7/22 Trial Tr. at 76. Agent Della Camera testified that such a referral was made in this case to that unit within approximately 8 hours of the crash. 11/7/22 Trial Tr. at 98. Agent Della Camera further testified that, following this referral, he personally participated in witness interviews where a federal civil rights violation was investigated, and that he also participated in other investigative steps in furtherance of the federal civil rights investigation. 11/8/22 Trial Tr. at 11-12.

Special Agent Sean Ricardi—the lead case agent assigned to this matter following its referral from MPD IAD—provided similar first-hand testimony on this point. He testified that

---

[1] This testimony is inaccurately described by the Defendant as "testimony that [Bray] did not anticipate a federal civil rights investigation." ECF No. 375 at 2.

2

after getting assigned, he began an investigation into federal civil rights violations. Trial Tr. 10/28/22, at 65:6-9. He explained that the investigative team was "really trying to look at the initial interaction from all angles," including "civil rights violations," whether "there was any attempt to cover up or obstruct any potential investigation," and whether "Mr. Hylton were perhaps targeted by any of the officers involved." Trial Tr. 10/26/22 (pm session), at 17:11-17. He was also directed to work on the investigation with prosecutors in the Public Corruption and Civil Rights Section at the U.S. Attorney's Office, which works on cases in federal court in D.C. *Id*. at 65:10-66:2. Taken together, this testimony from the investigators who were responsible for handling this matter, first at MPD and then in the Criminal Investigative Unit of the U.S. Attorney's Office, provides admissible, non-hearsay evidence concerning the federal nexus here.

Unlike Special Agent Sean Ricardi or Agent Della Camera, Sergeant Bray had no oversight or responsibility over how or when the Government investigated this particular criminal civil rights matter. Although Sergeant Bray interviewed as a witness because he served as the Field Commander on the night of the crash and eventually responded to the scene, he was not part of the prosecution team at any point, nor was he privy to information about the nature and scope of the government's investigation. His offhand commentary several hours after the crash, made to a fellow officer and admittedly only "with preliminary evidence," ECF No. 375 at 2, has no bearing on this Court's jurisdiction. Given this highly limited factual role, for the defense to suggest otherwise will only serve to confuse the jury, especially given Sergeant Bray's elevated position as the Field Commander on the night of this incident.

The Defense expectation to use Sergeant Bray's comment about a "declination" underscores the risk that his testimony on this point will mislead and confuse the jury for yet another reason. Contrary to the assertion in the defendant's opposition brief that Sergeant Bray's

3

offhand comment about a "declination" suggests that he "did not anticipate a federal civil rights investigation" (at 2), his statement is actually consistent with Special Agent Ricardi and Agent Della Camera's testimony that this case was destined for referral and investigation by federal authorities, because there can be no declination without a referral to the U.S. Attorney's Office. Indeed, as this Court has repeatedly reminded the defense, jurisdictional sufficiency hinges not on whether a federal crime was actually charged or committed but, rather, "on the commission or possible commission of a federal offense." 10/25/22 Trial Tr. at 40-41. ("They don't have to prove that they could have proved a violation. All they have to do is [prove] that the communication related to the possible commission . . . [t]hey don't have to prove an actual commission"). In other words, a declination by the U.S. Attorney's Office is meaningless for purposes of assessing jurisdiction under 18 U.S.C. 1512(b)(3); instead, a "declination" implicitly means that a referral for investigation of a possible federal crime has already occurred.

This testimony by Sergeant Bray also risks opening up areas that the Court has already ruled inadmissible, including conclusory statements about the "unique" nature of this prosecution. *See* Opinion, ECF 321, at 39 (Oct. 23, 2022) (ruling inadmissible "defendants' assertions that this is an unprecedented criminal case" on the ground that it is "irrelevant, inappropriate for consideration by the jury, invite[s] jury nullification, and distract[s] from the issues at trial"); *see also Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) (holding witness testimony consisting of legal conclusions inadmissible). Based on his prior statements, it is expected that Sergeant Bray would testify that his comment about a "declination" was based on his understanding that unauthorized pursuits are typically not prosecuted and would thus be "unprecedented." Testimony about Sergeant Bray's conclusion would therefore not only infringe on a legal question for the jury to decide, but would also preclude any meaningful cross-

4

examination to test the basis for his opinion because it would elicit a reason based on an irrelevant and inadmissible considerations.

This problem is even more amplified upon closer examination. In prior statements, Sergeant Bray also stated that he did not believe that a criminal prosecution could result in this case because there was no evidence that defendant Sutton ever struck Hylton-Brown's moped. But as explained in the Government's Motion in Limine to Preclude Inadmissible Testimony of Detective DePeralta, ECF 377, such a conclusion is based on a flawed understanding of causation that the Court of Appeals soundly rejected in *Fleming v. United States*, 224 A.3d 213, 221 (D.C. 2020). *See also Blaize v. United States*, 21 A.3d 78, 80-81 (D.C. 2011); *Bonhart v. United States*, 691 A.2d 160, 162-64 (D.C. 1997). For Sergeant Bray to base his conclusory opinion about a "declination" on a mischaracterization of the law places the government in an untenable position of either not examining the baseless reason for his opinion or eliciting the reason and confusing the jury with a senior MPD official's opinion masquerading as the law when indeed wholly erroneous. Because Sergeant Bray's conclusory testimony about a likely declination is of low probative value because it is based on limited facts and is baseless in law, lacking in relevance, and highly misleading to the jury this Court should rule it inadmissible under Rule 403. As a result, and because there is limited to no import to the rest of his involvement in this case, Sergeant Bray should only testify provided the defense can proffer a non-cumulative and relevant basis for his testimony.

II.     **Dr. Tolliver's Testimony should be Limited**

As discussed in the Government's Motion in Limine, ECF No. 374, Dr. Tolliver is a toxicologist with OCME who conducted tests on Hylton-Brown's blood in the course of carrying out Hylton-Brown's autopsy. The Defendant's opposition to the Government's Motion in Limine

5

does not shed any light on Dr. Tolliver's proposed testimony beyond confirming that she is being called as an "expert." ECF No. 375. The Defendant's original expert notice was otherwise devoid of any actual opinion she would provide, stating only that she could "testify to the opinions reached . . . in the course of [her] work in this case." *See* ECF 219-1, at 10.

It was not until his November 4, 2022, motion, well after Rule 16 expert notice was due, that defendant Sutton for the first time indicated what Dr. Tolliver would testify about. At that time, he stated that Dr. Tolliver would provide testimony that Hylton-Brown had consumed THC "within a few hours of the incident," had consumed benzodiazepine and oxycodone, and proving that the substances in Hylton-Brown's system "impaired [him] to the point that he would not be able to safely operate a motor vehicle," and ECF No. 344 at 3-4. But, the record before the Court is completely absent of any foundation for such testimony, and the defendant's opposition brief provides no clue as to how it could be established. Nor can it be where such opinions are beyond Dr. Tolliver's knowledge or expertise—not having known Hylton-Brown or his degree of tolerance and adaptability to the drugs—and they elicit ultimate conclusions that are for the jury to decide. In addition, there is no mention in the toxicology report that Hylton-Brown had benzodiazepine in his system. Such an incomplete proffer of Dr. Tolliver's expert opinion, and her basis for that opinion, is woefully inadequate as a basis to admit the type of testimony the defendant seeks to elicit. *See e.g., United States v. Day*, 524 F.3d 1361, 1370–71 (D.C. Cir. 2008) (upholding exclusion of proffered expert medical testimony as a sanction for defense's failure to comply with federal rule of criminal procedure governing disclosure of a summary of expert opinion).

Indeed, only now, in response to the Government's motion in limine, Defendant Sutton does not contest that Dr. Tolliver cannot testify about "benzodiazepine," because no such

substance was found in his blood. He also does not dispute that his expert notice was devoid of any proffered opinion from Dr. Tolliver regarding the impact that THC and Oxycodone would have on a person and his driving—that is, the key portions of testimony the defendant seeks to elicit from this witness. Rather, he cites, incredibly, to his own motion for the proposition that "this Court has already ruled to admit Dr. Tolliver's testimony." ECF No. 375 at 3 citing ECF No. 344. The Court has done no such thing. Other than opining about Hylton-Brown having consumed THC some hours before the crash as well as the existence of Oxycodone in his blood at the time it was analyzed by OCME, Dr. Tolliver has no other relevant testimony based on an adequate foundation to provide. Her testimony should therefore be curtailed as proposed by the government.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: _____
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7097 (Baset)
       (202) 252-6782 (Berkower)
Email: Ahmed.Baset@usdoj.gov
       risa.berkower@usdoj.gov