UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-0598 (PLF) |
| | ) | |
| TERENCE SUTTON | ) | |
| and | ) | |
| ANDREW ZABAVSKY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

   Pending before the Court is defendant Andrew Zabavsky's Motion for
Reconsideration of the Court's Order Granting the Government's Motion in Limine to Exclude
Inadmissible Expert Testimony ("Zabavsky Mot.") [Dkt. No. 373].  Mr. Zabavsky requests that
the Court reconsider its decision excluding his proffered expert James Dahlquist from testifying
at trial; or in the alternative, permit Mr. Zabavsky to present a replacement expert witness.  See
Zabavsky Mot.

   The government opposes Mr. Zabavsky's motion and argues that "Zabavsky
offers no basis within this applicable legal framework for the Court to reconsider its decision that
James Dahlquist is unqualified under Daubert."  Opposition to Defendant's Motion for
Reconsideration ("Gov't Opp.") [Dkt. No. 378] at 2.  The government further contends that the
cases Mr. Zabavsky cite do not support "a mid-trial opportunity to notice and call a brand new
expert simply because the expert he originally noticed was deemed unqualified."  Id. at 5.  For
the following reasons, the Court will deny Mr. Zabavsky's motion for reconsideration as to

Mr. Dahlquist, but it will grant Mr. Zabavsky's request to present a substitute expert witness with the limitations described below.

## I.  LEGAL STANDARD

Although the Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration, the Supreme Court has recognized that district courts may consider such motions in criminal cases.  See United States v. Dieter, 429 U.S. 6, 8 (1976) (per curiam); United States v. Healy, 376 U.S. 75, 80 (1964).  When considering motions for reconsideration in a criminal case, judges in this district "import[] the standards of review applicable in motions for reconsideration in civil cases."  United States v. Hassanshahi, 145 F. Supp. 3d 75, 80 (D.D.C. Nov. 19, 2015); see also United States v. Sutton, Crim. No. 21-0598, 2021 WL 5999407, at *1 (D.D.C. Dec. 20, 2021).

In motions related to an interlocutory decision, the court applies an "as justice requires" standard.  United States v. Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).  Corrections are limited and are not meant to provide parties with a chance to reargue a previously decided issue.  See United States v. Lieu, Crim. No. 17-0050, 2018 WL 5045335 at *2-3 (D.D.C. Oct. 17, 2018).  In evaluating what "justice requires," the Court considers "whether it 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or [whether] a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'"  United States v. Hassanshahi, 145 F. Supp. 3d at 80 (citing Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

A motion for reconsideration should not be used or seen as an opportunity to relitigate previously ruled upon issues, including "arguments that could have been, but were not,

raised previously and arguments that the court has already rejected." United States v. Booker, 613 F. Supp. 2d 32, 34 (D.D.C. 2009). Motions for reconsideration are subject to the "'sound discretion of the trial court.'" United States v. Haassanshahi, 145 F. Supp 3d at 80 (quoting United States v. Trabelsi, Crim. No. 60-89, 2015 WL 5175882, at *2 (D.D.C. Sept. 3, 2015)). The moving party bears the burden of demonstrating that reconsideration is appropriate. See id.

## II. DISCUSSION

### A. Motion for Reconsideration

The Court excluded Mr. Dahlquist's testimony in full after determining that "Mr. Dahlquist's experience with the Cobb County, Georgia police department [did] not qualify him as a police procedures expert, much less an expert on [Metropolitan Police Department ("MPD")] policies." United States v. Sutton, Crim. No. 21-0598, 2022 WL 16960338, at *13 (D.D.C. Nov. 16, 2022). The Court explained that "[u]nlike Mr. Drago, [the government's expert], who has experience with 'formulat[ing] law enforcement policy' and 'extensive knowledge of national model policing standards,' there is no indication that Mr. Dahlquist has sufficient experience or familiarity with national standards, let alone local standards in Washington, D.C." Id. (internal citations omitted).

In support of Mr. Zabavsky's motion to reconsider, counsel for Mr. Zabavsky said that Mr. Dahlquist "has been offered as [an] expert on crash investigations and standard police procedures for conducting crash investigations." Email from A. Bluestone to the Court and Counsel ("Bluestone Email") (Nov. 30, 2022). Mr. Zabavsky argues in his motion to reconsider that Mr. Dahlquist possesses knowledge of national policing standards because he "has attended training courses" on relevant topics including "Motorcycle Crash Investigation" in "multiple

states beyond Georgia, including Texas, Florida, and Ohio." Zabavsky Mot. at 1-2. The Court is

not persuaded. Merely attending such training courses – only some of which appear to be related

to crash investigation procedures – does not qualify Mr. Dahlquist as an expert on national or

MPD standards on crash investigations. See James K. Dahlquist CV [Dkt. No. 373-1] at 2-3.

The Court therefore denies Mr. Zabavksy's motion to reconsider its ruling excluding

Mr. Dahlquist's expert testimony at trial.

### B.   Request for a Substitute Expert

Notwithstanding the Court's ruling on Mr. Dahlquist, however, the Court in its

discretion will permit the expert testimony of Mr. Zabavsky's substitute expert, Michael Miller.

Mr. Zabavsky has made clear that he proffers Mr. Miller, his alternate police practices expert, for

a very narrow purpose:  to opine on police procedures relating to crash investigations only.  See

Bluestone Email.  This is quite different from Mr. Zabavsky's initial expert disclosure for

Mr. Dahlquist, which proffered a wide range of anticipated testimony about police procedures at

large, crash reconstruction, and other topics "beyond the scope of the expertise of either a crash

reconstructionist or a police procedures expert."  United States v. Sutton, 2022 WL 16960338,

at *14.  In the Court's judgment, counsel's amended proffer has provided a sound basis

warranting Mr. Zabavsky to present a substitute witness.  See Bluestone Email.

### 1.   Qualifications

Mr. Miller is qualified as an expert on national police procedures and MPD

policies relating to the conduct of crash investigations.  From 1999 to 2016, Mr. Miller worked

in MPD's Major Crash Investigations Unit ("Major Crash"), including teaching "Basic Crash

Investigation" to police recruits at the MPD Academy from 2014 through 2016.  See Bluestone

Email. In addition, Mr. Miller has "served on the Maryland Crash Reconstruction Committee, Advance Crash Investigation board," and has lectured on accident investigation and reconstruction and vehicle pursuit fatalities. Id. Mr. Miller has also "taken a series of course[s] across the country on accident investigations." Id. Since 2015, Mr. Miller has worked as an associate accident investigator, reconstructionist, and forensic video analyst with Comprehensive Motor Vehicle Services & Consulting, assisting with on-scene crash investigations. See Michael Miller CV at 1. These professional experiences qualify Mr. Miller as an expert on crash investigations.

2.   Relevance of Testimony

On December 2, 2022, the government orally raised a separate objection to Mr. Miller's testimony and argued that Mr. Miller's proffered opinions are irrelevant to the substantive issues in this case. The government stated the following:

> [T]o the extent that [Mr. Zabavsky] [is] looking to have someone testify about MPD's procedures to conduct a [M]ajor [C]rash investigation, that's really not relevant to what we are looking at here.

> What we are looking at here is whether these defendants acted to prevent [M]ajor [C]rash from being notified to initiate an investigation. How they carried that out really isn't relevant once they were called to the scene. And to have an expert opine on [M]ajor [C]rash's procedures and investigative methods and steps that they took once they are at the scene is really a collateral issue that we don't need expert testimony on, and it's not -- it doesn't actually speak to the questions the jury is going to have to answer at the end of the day.

> The questions that the jury is going to have to answer are was there misleading conduct designed to interrupt the initiation of investigation, not a separate assessment of the quality or conclusions that that investigation ultimately led to.

Transcript of Jury Trial – Day 27, December 2, 2022 ("Dec. 2 Tr.") at 156:14-157:6.

The Court disagrees. To start, the Court believes that MPD's procedures for conducting Major Crash investigations are relevant to Mr. Zabavsky's defense because the jury must assess whether he "engage[d] in misleading conduct toward another person with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States information relating to the commission and possible commission of a Federal offense." Indictment [Dkt. No. 1] at ¶ 31 (citing 18 U.S.C. § 1512(b)(3)). A Major Crash investigation, which is MPD's internal process for investigating traffic collisions, is relevant because the indictment alleges that "[t]he purpose of the conspiracy was for SUTTON and ZABAVSKY to hide from MPD officials the circumstances of the traffic collision leading to Hylton-Brown's death, to prevent an internal investigation of the incident and referral of the matter to federal authorities for a criminal civil rights investigation." Id. at ¶ 32.

Furthermore, the government is incorrect that the only question the jury must determine is whether "there [was] misleading conduct designed to interrupt the initiation of investigation." Dec. 2 Tr. at 157:3-4 (emphasis added). The indictment includes allegations about Mr. Zabavsky's conduct at the scene of the crash. See, e.g., Indictment at ¶¶ 34-44. These allegations, if proven at trial, might lead the jury to conclude that Mr. Zabavsky hindered the internal investigation of the incident even if Major Crash had been timely notified. For example, the indictment alleges that "ZABAVSKY obtained no witness statements, nor did he direct any other officer to take statements, despite being approached by at least one individual who asserted he was an eyewitness," and "[w]hen ZABAVSKY left the scene, he did not leave any other police official in charge." Id. at ¶¶ 39, 43. Mr. Zabavsky is entitled to argue to the jury that the Major Crash investigation was ultimately conducted properly to defend against the government's allegations of his obstructive conduct.

The Court, in the exercise of its discretion, will permit Mr. Miller to testify as an expert on police procedures relating to crash investigations. The Court further finds that the government is not prejudiced by the late disclosure of this witness. Cf. United States v. Cruz, 156 F.3d 22, 30 (1st Cir. 1998) ("Even when the government has produced a witness list in advance, when a witness not previously listed is offered, the decision to admit the testimony is within the discretion of the trial judge." (cleaned up)). Accordingly, it is hereby

ORDERED that Andrew Zabavsky's Motion for Reconsideration of the Court's Order Granting the Government's Motion in Limine to Exclude Inadmissible Expert Testimony [Dkt. No. 373] is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 12/7/22