UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | Case No. 1:21-cr-598-PLF |
| v. | : | |
| | : | |
| TERENCE SUTTON and | : | Hon. Paul L. Friedman |
| ANDREW ZABAVSKY | : | |
| | : | |
| Defendants | : | |

**ANDREW ZABAVSKY'S MOTION FOR BRADY SANCTIONS**

Comes now, Andrew Zabavsky, through counsel Zampogna, P.C., hereby requests that the Court determine if the government has violated its discovery obligations in connection with the preparation of Dr. Samantha Tolliver.

**FACTUAL BACKGROUND**

On December 21, 2022, the jury returned a verdict against Andrew Zabavsky in *United States v. Andrew Zabavsky*, 1:21-cr-598-PLF, finding him guilty of Obstruction of Justice under 18 U.S.C. § 1512(b)(3) as well as Conspiracy under 18 U.S.C. § 371. Two days after that verdict, on December 23, 2022, AUSA Ahmed Baset, one of the prosecutors representing the government, provided to counsel notes and memoranda of investigation from two witness interviews: one with Dr. Samantha Tolliver and one with Major Crash Detective Victor Deperalta. Both witnesses were called by defendants, but were in the control of the government as they were employees of the District of Columbia.

1

On Friday, November 25, 2022, Special Agent Sean Ricardi, AUSA Baset, and AUSA Risa Berkower conducted an interview of Samantha Tolliver. The existence of this interview, as well as a description of what was said, was not provided to defendants until December 23, 2022, nearly a month later and after the jury had rendered its verdict.

In the email providing these materials, AUSA Baset stated

> Attached are two MOIs and related agent notes that memorialized mid-trial interviews with witnesses Victor DePeralta and Dr. Samantha Tolliver. We do not believe these materials constitute Rule 16, Jencks, or Brady disclosures but are nonetheless providing them out of an abundance of caution.

See Exhibit 1. Notably, in the handwritten notes from the interview, the writer of the notes wrote "test detected a small amount of acetone, not enough to impair." Exhibit 2.[1]

## ARGUMENT

The Government must disclose evidence that is favorable to the defense, regardless of whether it is exculpatory. A failure to provide this evidence constitutes a violation of due process when there is prejudice, regardless of whether there was an intention to suppress or not. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Agurs*, 427 U.S. 97 (1976); and *United States v. Bagley*, 473 U.S. 667, 767 (1985). *Cone v. Bell*, 556 U.S. 449 (2009) (reversible error not conducting *Brady* evidentiary

---

[1] Notably, that information was excluded from the final memorandum of investigation.

hearing); *U.S. v. Brooks*, 966 F.2d 1500 (1992) (holding that the failure of the US Attorney's Office to affirmatively search Metropolitan Police Department files constituted a violation of *Brady*); *Kyles v. Whitley*, 514 U.S. 419, 437 (1996) (*Brady* violations must be considered cumulatively).

The failure to timely disclose the material provided by AUSA Baset in the December 23, 2022 email prejudiced Zabavsky.

According to the National Institute of Health, "acetone exposure has been associated with the central nervous system (CNS) depression, confusion, coma, ataxia, *coordination impairment*, dizziness, weakness, headache, irritability, stupor, seizure, sleep disturbance, memory difficulty, and *difficulty in speaking*." National Institute of Health, *Acetone Ingestion Resulting in Cardiac Arrest and Death* (Oct. 3, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8564060/#REF7 (emphasis added). Based on the NIH's description of the symptoms of acetone exposure, acetone exposure contains many of the same symptoms as alcohol exposure.

The potential for Hylton-Brown to be intoxicated was a recurring line of questioning throughout the trial. Kavonn Mason's direct examination by the government contained:

> Q: Could you tell if Mr. Hylton-Brown had drank or smoked anything that night?
> A: No.
> Q: No as in you couldn't tell?
> A: No. He wasn't high. He wasn't drunk.

Trial Testimony, Nov. 1, 2022, AM session, at 47:6-10. During its questioning of Officer Nicole Arnone, the government asked "Q: Did you at any point smell any

3

alcohol coming from Mr. Hylton-Brown?  A: Not that I can recall." Trial Testimomy, Nov. 8, 2022 PM session, at 73:8-10.

Similarly, a number of questions were posed to Jeffrey Folts, who discussed the process for conducting a field sobriety test.  Trial Transcript, Nov. 9, 2022, AM session.  On cross-examination, Officer Cory Novick testified that

> Q: And you smelled his vomit as well as, . is that accurate?
> A: I did.
> Q: And it smelled of alcohol?
> A: To my recollection, yes.

Trial Transcript, Nov. 14, 2022 PM session, at 111:14-17.  While illuminative, these selections do not contain the entire bevy of questioning related to whether Hylton-Brown had alcohol or other drugs in his system at the time of the collision.

The Court even highlighted the importance of whether Hylton-Brown was intoxicated.

> But what's in his system – and then there's the testimony about whether his vomit smelled of alcohol and the testimony about whether he was drunk and slurring his words, which is what I believe the testimony was that Lieutenant Zabavsky said to Captain Porter.  And if this evidence supports that, it undercuts the prosecution theory that, that was a misleading statement in furtherance of the conspiracy to obstruct and obstruction.

Trial Transcript, Nov. 18, 2022 AM session, at 32:14-21.  For that reason, the Court admitted the toxicology report of Hylton-Brown which showed the presence of a number of drugs in his system, notably THC and oxycodone.

On December 1, 2022, defendant Terence Sutton called Dr. Samantha Tolliver, the Chief Toxicologist at the Washington, D.C. Office of the Chief Medical Examiner, to testify regarding the toxicology study performed on Hylton-Brown.

Dr. Tolliver, a D.C. government employee, had, unknown to the defendants, been interviewed and prepared by the government during the Thanksgiving recess prior to her testimony.

The acetone concentration discussed between the government and Dr. Tolliver during their November 25, 2022 conversation was not disclosed in the toxicology report or discussed during testimony on December 1, 2022. Given the importance of whether Hylton-Brown was impaired by alcohol or other drugs, the fact that the existence of acetone in Hylton-Brown was hidden from defendants until after the jury had reached a verdict bears extreme prejudice. The government's actions prevented Zabavsky from presenting his full case and proving that he had not provided false statements to Captain Porter and others by stating that Hylton-Brown was intoxicated.

## REQUEST FOR A HEARING

The government's failure to provide any record of this interview for nearly a month and until two days after the jury had reached its verdict constitutes a violation of the government's *Brady* obligations. The scope of the appropriate sanction must be determined through a hearing on the violation.

The hearing on this *Brady* violation should include testimony from Dr. Samantha Tolliver regarding her interview with AUSA Baset, AUSA Risa Berkower, and Special Agent Sean Ricardi.

Additionally, Special Agent Sean Ricardi, a member of the prosecution team, should be required to testify about the preparation of the memorandum of investigation from that interview, including when it was completed.

Further, AUSA Baset must testify regarding the decision to postpone the sharing of the memorandum of investigation, as well as the notes of that interview, until two days after the jury had reached a verdict, ensuring maximum prejudice.

## ADOPTION OF SUTTON'S *BRADY* MOTION

Zabavsky hereby joins the requests provided in Sutton's Motion for *Brady* sanctions filed February 17, 2023. Furthermore, Zabavsky provides additional argument in support of a *Brady* sanction.

The government's suppression of the interview it conducted with Detective DePeralta constituted prejudice against Zabavsky's defense.

In that interview, Detective DePeralta discussed the major crash section's use of the narrative section of a police report. The memorandum provides that

> When Major Crash detectives get a police report, they can get statements from the police report, but Major Crash conducts their own investigations and does not solely rely on the police report. In the case involving HYLTON, DEPERALTA did not review the narrative portion of the police report because he did not need that information for his investigation… For his investigations, even a report about what happened immediately before a crash would not be something that he would necessarily use for his investigation.

See Exhibit 3.

The government, despite knowing that the major crash section does not use the narrative portion of a police report (instead using it for the statements within),

6

stated in its closing that the narrative section was filled with "lies to keep the major crash unit… from digging into the truth." Trial Transcript, Dec. 14, 2022 AM session, at 40:22-23.

Despite knowing that the major crash unit does not use the narrative sections of police reports, AUSA Baset made his case in such a way as to depict the major crash unit relying on the narrative section of the partially written police report drafted by Sutton. Without the exculpatory information available from the government's interview with Detective DePeralta, Zabavsky was unable to properly defend against the charge that he supported a faulty police report in order to push a false narrative, despite there being no evidence that this narrative is routinely, if ever, used as part of an investigation.

For that reason, Zabavsky joins Sutton's Motion for *Brady* sanctions.

## CONCLUSION

For the foregoing reasons, the government has violated their due process requirements as articulated in *Brady v. Maryland* and therefore the Court must hold evidentiary hearings to determine an appropriate sanction.

Dated:   February 17, 2023          Respectfully Submitted,

*/s/ Christopher Zampogna*
Christopher A. Zampogna, #44985
Abraham Bluestone, #1780408
Zampogna, P.C.
1776 K St NW, Ste 700

7

                                Washington, DC 20006
                                (202)223-6635
                                caz@zampognalaw.com
                                ab@zampognalaw.com
                                Attorneys for Andrew Zabavsky

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I served the foregoing Motion for *Brady* Sanctions on all parties via Pacer, the Court's electronic case filing system.

*/s/ Abraham Bluestone*
Abraham Bluestone
Zampogna, P.C.
